United States Court of Appeals,

Eleventh Circuit.

No. 94-5211.

ESTATE OF Lucille P. SHELFER, Deceased, the Quincy State Bank, Personal Representative, Respondent,

v.

COMMISSIONER OF INTERNAL REVENUE, Petitioner.

July 1, 1996.

Appeal from a Decision of the United States Tax Court. (No. 25389-92).

Before KRAVITCH, DUBINA and CARNES, Circuit Judges.

KRAVITCH, Circuit Judge:

The Commissioner of the Internal Revenue Service ("Commissioner") appeals the Tax Court's decision in favor of the estate of Lucille Shelfer. The court held that Lucille's estate was not liable for a tax deficiency assessed on the value of a trust from which she had received income during her lifetime. The estate of Lucille Shelfer's husband, Elbert, previously had taken a marital deduction for these trust assets, claiming that the trust met the definition of a qualified terminable interest property trust ("QTIP") pursuant to 26 U.S.C. § 2056(b)(7).

This case presents an issue of first impression for this circuit: whether a QTIP trust is established when, under the terms of the trust, the surviving spouse is neither entitled to, nor given the power of appointment over, the trust income accumulating between the date of the last distribution and her death, otherwise known as the "stub income." The Commissioner interprets the QTIP statutory provisions to allow such trusts to qualify for the

marital deduction in the decedent's estate; accordingly, the value of the trust assets must be included in the surviving spouse's estate. We agree with the Commissioner and REVERSE the Tax Court.

I.

Elbert Shelfer died on September 13, 1986 and was survived by his wife, Lucille. Elbert's will provided that his estate was to be divided into two shares, that were to be held in separate trusts. The income from each trust was to be paid to Lucille in quarterly installments during her lifetime. The first trust was a standard marital deduction trust consisting of one-third of the estate. It is not at issue in this case. The second trust, comprising the remaining two-thirds of the estate, terminated upon Lucille's death. The principal and all undistributed income was payable to Elbert's niece, Betty Ann Shelfer.

Elbert's will designated Quincy State Bank as the personal representative for his estate, and on June 16, 1987, the bank filed a tax return on behalf of the estate. The bank elected to claim a deduction for approximately half of the assets of the second trust under the QTIP trust provisions of 26 U.S.C. § 2056(b)(7). The IRS examined the return, allowed the QTIP deduction, and issued Quincy Bank a closing letter on May 10, 1989. The statute of limitations for an assessment of deficiency with respect to Elbert's return expired on June 16, 1990.

On January 18, 1989, Lucille died; Quincy State Bank served as personal representative for her estate. The bank filed an estate tax return on October 18, 1989 and did not include the value of the assets in the trust, even though the assets previously had

been deducted on her husband's estate tax return.  The IRS audited the return and assessed a tax deficiency for the trust assets on the ground that the trust was a QTIP trust subject to taxation. Quincy State Bank commenced a proceeding in tax court on behalf of Lucille's estate, claiming that the trust did not meet the definition of a QTIP trust because Lucille did not control the stub income;  therefore, the Bank argued, the estate was not liable for tax on the trust assets under 26 U.S.C. § 2044.  The Tax Court agreed.  The Commissioner appeals this decision.

## II.

The proper construction of a statutory provision is a purely legal issue;  thus, we apply a *de novo* standard of review to the Tax Court's decision.  *Kirchman v. Commissioner,* 862 F.2d 1486, 1490 (11th Cir.1989).  As in any case involving the meaning of a statute, we begin our analysis with the language at issue.

26 U.S.C. 2056(b)(7)(B) provides, in relevant part:

> (i) In general.—The term "qualified terminable income interest property" means property—

> (I) which passes from the decedent,

> (II) in which the surviving spouse has a qualifying income interest for life, and

> (III) to which an election under this paragraph applies.

> (ii) Qualifying income interest for life.—The surviving spouse has a qualifying income interest for life if—

> (I) *the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals,* or has a usufruct interest for life in the property, and

> (II) no person has a power to appoint any part of the property to any person other than the surviving spouse. Subclause (II) shall not apply to a power exercisable only at

or after the death of the surviving spouse.[1]

(emphasis added).

Lucille's estate contends, and the Tax Court held, that the phrase "all of the income" includes income that has accrued between the last distribution and the date of the spouse's death, or the stub income. They argue that "all" refers to every type of income. Stub income is a kind of income, and thus the surviving spouse must be entitled to stub income in order for the trust to qualify as a QTIP trust. They conclude that because Elbert's will did not grant Lucille control over the stub income, the QTIP election fails.

In contrast, the Commissioner and amicus[2] argue that the statute is satisfied if the surviving spouse controls "all of the income" that has been distributed. They contend that the requirement that income be, "payable annually or at more frequent intervals," limits "all of the income" to distributed income, namely those payments that have been made to the surviving spouse during her life. *See Estate of Howard v. Commissioner,* 910 F.2d 633, 635 (9th Cir.1990) (concluding that "if [the surviving spouse] has been entitled to regular distributions at least annually, she has had an income interest for life").

The estate replies that the phrase "payable annually or at

---

[1]This section of the code is complemented by § 2044, which provides for the inclusion of the QTIP assets in the estate tax return of the surviving spouse. It states that "[t]he value of the gross estate shall include the value of any property to which this section applies in which the decedent had a qualifying income interest for life." The statute does not further define "qualifying income interest for life," so we refer back to the definition given in § 2056 above.

[2]The American Bar Association was granted leave to participate as amicus curiae.

more frequent intervals" is separated from the preceding clause by commas, and thus is a parenthetical clause.  Because parenthetical clauses are non-restrictive, it contends that the clause is merely a description of the distribution process and does not in any way limit the preceding requirement that the spouse must be entitled to "all of the income."

Both parties insist that their reading of the statute is "plain."  We do not agree.  Although the use of commas around the clause "payable annually or at more frequent intervals" does indicate a parenthetical clause, we refuse to place inordinate weight on punctuation and ignore the remainder of the sentence.  It is equally plausible that the next clause is designed to provide a context from which to define "all of the income."[3]  *Cf. Smiley v. Citibank,* --- U.S. ----, ----, 116 S.Ct. 1730, 1736, --- L.Ed.2d ---- (1996) ("A word often takes on a more narrow connotation when it is expressly opposed to another word:  "car,' for example, has a broader meaning by itself than it does in a passage speaking of "cars and taxis.' ").  Nothing in this statutory provision on its face allows us to choose between these interpretations.  Accordingly, we must look to other sources for guidance.

---

[3]We accept the possibility that the second clause—"payable annually or at more frequent intervals"—may be an important context for understanding the first phrase, "all of the income." *See Smith v. United States,* 508 U.S. 223, 230-32, 113 S.Ct. 2050, 2055, 124 L.Ed.2d 138 (1993) (noting that surrounding terms may clarify the meaning of a word).  We reject, however, the Commissioner's assertion that the second clause necessarily limits the preceding clause.  If this clause were indeed a restrictive clause, then the surviving spouse would only be entitled to that which had been paid out annually or more frequently;  another person could receive income distributed less frequently.  This result was clearly not intended by Congress.

The Commissioner contends that the second part of the statute, subclause (ii)(II), mandates her reading of the statute. This clause states that no one can have the power to appoint any of the property to someone other than the surviving spouse. This prohibition is modified by the language beneath this clause, known as the "flush language," which states that subclause II expressly does not apply to a power exercisable only at or after the death of the surviving spouse. *See Estate of Shelfer v. Commissioner,* 103 T.C. 10, 21-22, 1994 WL 373509 (1994) (Wells, J., dissenting). The flush language allows the decedent to appoint the trust property to another beneficiary after the death of the surviving spouse. The Commissioner argues that the language also refers to disposition of the stub income after the spouse's death.

Although the flush language limiting subclause (ii)(II) is consistent with the Commissioner's argument, it does not directly apply to the independent requirement in subclause (ii)(I) that the spouse be entitled to "all of the income," which remains ambiguous. Thus, the statutory language alone does not resolve the issue before this court.

Our conclusion is further supported by the lack of consensus among jurists as to the clear meaning of this statute. In this case, the Tax Court split on the issue, with ten judges joining the majority and six judges dissenting. Moreover, in a Ninth Circuit case involving this same provision, the majority reversed the Tax Court and concluded that the statute plainly allowed the trust to qualify. *Howard,* 910 F.2d at 637. The dissent, however, agreed with the Tax Court's reading of the statute. *Id.* (Rymer, J.,

dissenting).  *See Smiley,* at ---, 116 S.Ct. at 1733 (In light of the disagreement among the courts and judges who have heard the issue, "it would be difficult indeed to contend that the word ... is unambiguous....").

Accordingly, we must look beyond the "plain language" of the statute for guidance.  When faced with a similarly ambiguous tax code provision, the Supreme Court thoroughly examined the history and purpose of the tax provision at issue, past practices, and the practical implications of its ruling.  *Commissioner v. Engle,* 464 U.S. 206, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984).[4]  We follow suit, beginning with the history and purpose of the marital deduction.

### III.

The marital deduction for estate taxes first appeared in § 812(e) of the Internal Revenue Code of 1939, which was enacted by the Revenue Code of 1948.[5]  The marital deduction provisions served the dual purposes of equalizing the tax treatment between persons in common-law and community property states[6] and "codify[ing] the long-standing notion that marital property belongs to the unitary

---

[4]In both *Engle* and the case before us, the Commissioner's interpretation was set forth in a proposed regulation.  *Id.* at 215 n. 11, 104 S.Ct. at 603 n. 11.  Without explicitly addressing the degree of deference to accord proposed, as opposed to final, regulations, the Court appeared to acknowledge that the Commissioner's interpretation must be upheld if it implemented the Congressional intent in some reasonable manner.  *Id.* at 224-25, 104 S.Ct. at 608.  Because we conclude that the history, purpose, and practical implications of the statute support the Commissioner's reading of the statute, we need not decide the appropriate degree of deference to accord her position.

[5]*United States v. Stapf,* 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963).

[6]*Id.*

estate of both spouses...." *Shelfer,* 103 T.C. at 25 (Beghe, J., dissenting).

An essential goal of the marital deduction statutory scheme "from its very beginning, however, was that any property of the first spouse to die that passed untaxed to the surviving spouse should be taxed in the estate of the surviving spouse." *Estate of Clayton v. Commissioner,* 976 F.2d 1486, 1491 (5th Cir.1992).[7] In accordance with this intent, the statute proscribed deductions for terminable property interests. Terminable property interests are those interests that will terminate upon the occurrence of an event, the failure of an event to take place, or after a certain time period.[8] Because these interests could terminate prior to the death of the surviving spouse, they posed a risk that the assets would escape taxation in the spouse's estate tax return.

The original statute allowed three exceptions to the terminable property rule for interests that would not escape taxation in the spouse's estate. Property interests would qualify for the marital deduction under any of the following conditions: 1) the interest of the spouse was conditional on survival for a limited period and the spouse survived that period; 2) the spouse had a life estate in the property with the power of appointment over the corpus; or 3) the spouse received all life insurance or annuity payments during her lifetime with the power to appoint all

---

[7]For a detailed description of the legislative history of the marital deduction, see *id.* at 1490-93.

[8]26 U.S.C. § 2056(b)(1)(A)-(C).

payments under the contract.[9]   To take advantage of these exceptions, however, the decedent had to relinquish all control over the marital property to the surviving spouse.

As divorce and remarriage rates rose, Congress became increasingly concerned with the difficult choice facing those in second marriages, who could either provide for their spouse to the possible detriment of the children of a prior marriage or risk under-endowing their spouse to provide directly for the children.[10] In the Economic Recovery Act of 1981, Congress addressed this problem by creating the QTIP exception to the terminable property interest rule.  According to the House of Representatives Report, the QTIP trust was designed to prevent a decedent from being "forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children." H.R.Rep. No. 201, 97th Cong., 1st Sess. 160 (1981).  Thus, the purpose of the QTIP trust provisions was to liberalize the marital deduction to cover trust instruments that provide ongoing income support for the surviving spouse while retaining the corpus for the children or other beneficiaries.

In addition to creating the QTIP trust provisions, the 1981 Act also substantially changed the marital deduction by lifting the limitations on the amount of the deduction.[11]  The Senate Report for

---

[9]26 U.S.C. § 2056(b)(3), (5)-(6) (1986).

[10]127 Cong.Rec. S345-346 (daily ed. July 24, 1980) (statement of Sen. Symms).

[11]As one tax expert colorfully stated, "Congress flew into the wild blue yonder in 1981 by exempting all transfers between a

the 1981 Act states the reason for the change: "The committee believes that a husband and wife should be treated as one economic unit for purposes of estate and gift taxes, as they generally are for income tax purposes. Accordingly, no tax should be imposed on transfers between a husband and wife." S.Rep. No. 144, 97th Cong., 1st Sess. 127 (1981), *reprinted in* 1981 U.S.C.C.A.N. 105, 228.

Although the legislative history of the 1981 Act sets forth Congress's reasons for enacting the statute, it does not directly address the stub income issue.[12] When "neither the statutory language nor the legislative history are dispositive of the issue, we guide ourselves generally by the purposes" of the Act and Congress's intent in enacting it. *Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 457 (11th Cir.1984). Accordingly, we must decide which interpretation of the statute best comports with the two general goals discussed above: expanding the marital deduction to provide for the spouse while granting the decedent more control

---

husband and wife ... subject to rules ... to insure that the exempted property will be taxed when the surviving spouse disposes of it." 5 Boris I. Bittker, Federal Taxation of Income, Estates and Gifts 129 (1984 & Cum.Supp. # 2, 1992). Prior to 1981, an estate marital deduction for the greater of $250,000 or one-half of the adjusted gross estate was allowed. The Tax Reform Act of 1976, Pub.L. No. 94-455, § 2002, 90 Stat. 1520, 1854 (1976).

[12]The Senate report contains no reference to the QTIP provisions. S.Rep. No. 144 at 127. The House report uses language almost identical to the statute and equally unclear: "First, the spouse must be entitled for a period measured solely by the spouse's life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals." H.R.Rep. No. 201 at 161. This language does not clarify whether "all the income" refers only to income distributed during the spouse's life or includes undistributed income. The remainder of the report does not clarify the issue.

over the ultimate disposition of the property, and treating a husband and wife as one economic entity for the purposes of estate taxation.

Under the Commissioner's interpretation of the statute, the decedent would gain the tax benefit, retain control of the trust corpus, and provide the spouse with all of the periodic payments for her personal support. The stub income, which accrues after her death and is thus not used for her maintenance, could be appointed to someone else. This result is consistent with the statutory goals of expanding the deduction while providing for the spouse's support.[13] In contrast, the Tax Court's reading of the statute would condition the tax benefit for the entire trust corpus on ceding control over a much smaller amount that is not needed for the spouse's support.

The statute's second goal, treating a married couple as one economic entity, was effected in a comprehensive statutory scheme. In addition to the QTIP provisions of § 2056(b)(7), Congress added § 2044, which requires the estate of the surviving spouse to include all property for which a marital deduction was previously allowed, and § 2056(b)(7)(B)(v), which states that a QTIP "election, once made, shall be irrevocable." Taken together, these

---

[13]Moreover, the QTIP provisions are exceptions to the general terminable interest property rule, which in turn is an exception to the broad rule of deductibility for marital assets. *Clayton,* 976 F.2d at 1498. As we have seen, Congress favored deferral of taxation for marital assets until the death of the second spouse. Because the terminable property rule is an exception to this general public policy, it should be narrowly construed. The QTIP statute, however, is an exception to this exception, and in keeping with Congressional intent, it should be accorded the same liberal construction as the marital deduction. *Id.*

sections of the code provide that assets can pass between spouses without being subject to taxation. [14] Upon the death of the surviving spouse, the spouse's estate will be required to pay tax on all of the previously deducted marital assets. The Commissioner's position comports with the statutory scheme because it compels the surviving spouse to abide by the irrevocable election of a QTIP trust and to pay taxes on property that had previously been subject to a deduction.[15]

The Tax Court opinion in this case reached the opposite conclusion. In addition to accepting the technical statutory arguments rejected above, the court relied upon the legislative history discussed extensively in its opinion in *Howard v. Commissioner,* 91 T.C. 329, 1988 WL 86347 (1988). *Shelfer,* 103 T.C. at 17. In *Howard,* the court began by acknowledging that the legislative history of the QTIP provisions in § 2056(b)(7) does not directly address the meaning of the clause "all of the income." Instead of turning to the general purposes of the Act, the court referred to the legislative history of § 2056(b)(5), a similar statute, and the accompanying regulations to that statute.

Section 2056(b)(5) allows a deduction for "property passing

---

[14]*See Griswold v. United States,* 59 F.3d 1571, 1579-80 (11th Cir.1995) (noting that when this court construes a statute, it "do[es] not look at one word or provision in isolation, but rather look[s] to the statutory scheme for clarification and contextual reference.") (internal citations and quotation marks omitted).

[15]*See Shelfer,* 103 T.C. 10, 19-20 (Parr, J., dissenting). In her dissent, Judge Parr also argues that equitable doctrines such as estoppel are applicable to situations of unjust enrichment. Because we hold that the Commissioner's position advances the legislative purpose of treating a couple as one economic entity, we do not reach the estoppel issue.

from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest." Unlike the QTIP provisions at issue here, § 2056(b)(5) requires that the spouse exert control over the trust corpus by power of appointment.

The Senate Report discussing § 2056(b)(5) lists the conditions necessary for a power of appointment trust to qualify for the deduction. The Report lists in separate subheadings the requirement that the spouse must be entitled to all of the income for her life, and the prerequisite that the income must be payable at annual or more frequent intervals. *Howard,* 91 T.C. at 333 (citing S.Rep. 1013, 80th Cong., 2d Sess., pt. 2, at 16-17 (1948)). The Tax Court determined that the two subheadings indicated that "all of the income" should be defined without reference to the requirement for periodic payments.

We do not read the report as compelling this result. The listing of two subheadings does not erase the possibility that Congress intended to define the first requirement by reference to or within the context of the second.

Additionally, even if we accept the Tax Court's construction of the Senate report for § 2056(b)(5), we do not reach the same conclusion with respect to § 2056(b)(7). Although this court presumes that the same words in different parts of the statute have the same meaning, such a presumption is rebuttable. *Doctors Hosp., Inc. of Plantation v. Bowen,* 811 F.2d 1448, 1452-53 (11th

Cir.1987).  In the instant case, the Commissioner has presented sufficient evidence to overcome the presumption.

First, the two sections were enacted in entirely different statutes, separated by a significant time period.  The Senate report for the power of appointment trusts in § 2056(b)(5) was written over thirty years prior to the 1981 enactment of the QTIP provisions at issue here.  Thus, we give more weight to the objectives stated in the more recent legislative history of the QTIP provisions.  *See Gulf Oil Corp. v. Panama Canal Co.,* 481 F.2d 561, 570 (5th Cir.1973) (holding that Congress's use of the same words many years ago "does not tie the law to an interpretation of those words or phrases fit for the past but now wholly out of keeping with the present").[16]

Second, the QTIP provisions were a substantial break with the past.  The whole purpose of § 2056(b)(7) was to eliminate the requirement that the surviving spouse retain control of all of the property, as was previously required under § 2056(b)(5).  In furtherance of this goal, Congress added flush language to the QTIP statute providing that the power to appoint property to someone other than the surviving spouse is exercisable after the spouse's death.

Importantly, the Tax Court did not rely solely on the similar wording of the two statutes in reaching its conclusion.  The court held that although the Shelfer trust did not qualify for a marital deduction, a trust could qualify for the deduction if the surviving

---

[16]Fifth Circuit cases decided before October 1, 1981, are binding precedent in this circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

spouse had a power of appointment over the stub income. *Shelfer,* 103 T.C. at 2 (citing *Howard,* 91 T.C. at 338). Neither of the statutes, however, specifically equates "entitled to all of the income" with "the power of appointment."[17] The Senate Report cited above also does not mention "power of appointment." Thus, the Tax Court had to go beyond the statutory language and the legislative history to find a realistic meaning for the critical statutory terms.

The Tax Court relied primarily upon the regulations accompanying § 2056(b)(5) for its determination that the spouse's power of appointment over the stub income would satisfy the statute. Estate Tax Regulations § 20.2056(b)-5(f). These regulations are particularly pertinent because they are referenced in the legislative history of the QTIP provisions of § 2056(b)(7). *Howard,* 91 T.C. at 335 (citing H.R.Rep. No. 201 at 161; Staff of Joint Committee on Taxation, 97th Cong., 1st Sess., General Explanation of the Economic Recovery Tax Act of 1981 at 435 (Comm.Print 1981)).[18] The Tax Court quoted from subsection 5(f)(8) of the regulations:

> [A]s respects the income for the period between the last

---

[17]*See* J. Scott Lowery, Case Note, Estate of Shelfer v. Commissioner of Internal Revenue: Is the Tax Court's Position on QTIPs "Stub"born or Justified?, 48 Ark.L.Rev. 987, 1000-01 (1995) (noting that the Tax Court's holding with respect to the power to appoint stub income contradicts its emphasis on the plain language of the statute).

[18]It should be noted that these regulations were not cited specifically in reference to the stub income issue. Although the *Howard* court excerpted the regulations dealing with stub income, these legislative reports appear to be referencing subsection 20.2056(b)-5(f)(1), a different subsection of the regulation dealing more broadly with the spouse's rights to income.

distribution date and the date of the spouse's death, it is sufficient if that income is subject to the spouse's power to appoint. Thus, if the trust instrument provides that income accrued or undistributed on the date of the spouse's death is to be disposed of as if it had been received after her death, and if the spouse has a power of appointment over the trust corpus, the power necessarily extends to the undistributed income.

The court read this regulation as requiring that the stub income "must be disposed of as the spouse directs." *Howard,* 91 T.C. at 333.

We disagree. The regulations must be interpreted in light of the statutory provisions of § 2056(b)(5), for which it was written. As previously discussed, § 2056(b)(5) creates an exception to the terminable property rule for property over which the surviving spouse has a power of appointment. The property is subject to taxation upon the spouse's death because the tax code requires an estate to pay taxes on all property over which the decedent had the power of appointment.[19] To complete the statutory scheme and to ensure taxation, the regulations require that the stub income be subject to the spouse's power of appointment or treated as part of the corpus over which the spouse had power of appointment.

Following the logic of the regulations, the person with the power to appoint the property in the trust corpus should be permitted to have the power to appoint the stub income; the stub income will then be subject to taxation along with the corpus property. Under the QTIP provisions, that person is the decedent. The trust corpus and the stub income would be taxable pursuant to

_____

[19]Pursuant to 26 U.S.C. § 2041(a)(2), any property over which the decedent has a general power of appointment should be included in the decedent's gross estate for taxation purposes.

§ 2044, which requires the spouse to include all previously deducted property in which she has a qualifying interest for life.[20] This comprehensive scheme, like that of the power of appointment trust, allows an initial deduction and later taxation of the property.[21]

Our conclusion that the trust income and the stub income can be treated the same for taxation purposes is consistent with the flush language of 2056(b)(7), which provides that any property can be appointed to someone other than the surviving spouse at or after the spouse's death. *See Shelfer,* 103 T.C. at 21-23 (Wells, J.,

---

[20]We acknowledge that § 2044 does not expressly apply to stub income because it provides that the surviving spouse's estate must include all property over which the spouse had a qualifying income interest for life. Although we have already shown that the trust property can be a qualifying income interest for life even if the surviving spouse is not given control of the stub income, we have not determined whether the stub income can be part of the qualifying income interest for life. The Commissioner's regulation, now finalized at 26 C.F.R. § 2044(b)(2), clarifies the issue by specifically including the stub income in the spouse's gross estate. We note that although the regulation was not finalized at the time of this action, it is the most consistent interpretation of the statute for the same reason that the regulations for the power of appointment trust are reasonable. Both regulations ensure that previously deducted property is taxed at the death of the surviving spouse. Moreover, both regulations are faithful to the statutory scheme. In the power of appointment regulations, the stub income is rendered subject to the power of appointment and becomes taxable. In the QTIP provisions, the stub income is included in the spouse's estate along with the trust corpus, both of which are not controlled by the spouse.

[21]Our reading of the regulation does not disqualify a trust instrument that provides for the surviving spouse to have the power of appointment over the stub income or to receive the stub income as part of her estate. Under those circumstances, Congressional goals will be served because the stub income will clearly be taxable and the couple will be considered one economic unit. We merely hold that the estate planning document at issue here also qualifies for the deduction because Congress provided a statutory scheme which will require taxation of the stub income if it reverts to the trust remainderman.

dissenting). Thus, under the terms of the statute, the trust corpus and the stub income can both be appointed to someone other than the surviving spouse after her death without disqualifying the trust from a marital deduction.

Examining the legislative history of the 1981 Act, we conclude that Congress intended to liberalize the marital deduction, to treat a husband and wife as one economic unit, and to allow the stub income to be treated in the same manner as the trust corpus for taxation purposes. These goals favor a broad interpretation of the statute that would allow the QTIP election in this case. Having assessed the legislative history and purpose of the statute, we turn to the practical implications of this interpretation.[22]

IV.

Our construction of the statute has several practical advantages over the Tax Court's position. First, it would assure certainty in estate planning. *See* Jacques T. Schlenger, et al., Failure to Pay Stub Income to Estate Defeats QTIP Election, 21 Est.Plan. 368 (1994) (noting that the Tax Court's decision in

---

[22]The parties also refer to the legislative history of the Technical Corrections Act of 1982, 26 U.S.C. § 2056(b)(7)(B)(ii). Both the House and Senate Reports for that act specified that a QTIP marital deduction for a pooled income trust qualifies for the marital deduction even if neither the spouse nor her estate receives the stub income. S.Rep. No. 592, 97th Cong., 2d Sess. 20 (1982) U.S.Code Cong. & Admin.News 1982, pp. 4149, 4166, 4167; H.R.Rep. No. 794, 97th Cong., 2d Sess. 17 (1982). Appellant claims that these reports clarified the QTIP provisions and should govern all QTIP trusts, even those that are not pooled. Appellee argues that Congress discussed the stub income issue with respect to pooled income trusts because the general rule required that the spouse retain control of the stub income. Because both explanations are plausible and because the history of § 2056(b)(7) reveals Congress's intent in passing the specific QTIP provisions at issue here, we decline to address these arguments any further.

*Shelfer* leaves the "stub income" issue unsettled).[23]  The status of trust instruments that were set up in accordance with the Commissioner's advice will not be in question and the validity of the Commissioner's final regulation on this matter will be affirmed.[24]

Second, our result comports with standard trust practices. Under the Tax Court's approach, a trust fund that made daily payments to the surviving spouse would qualify for the deduction because there would be no undistributed income;  in contrast, one that made quarterly payments would be ineligible.  In *Howard,* the Ninth Circuit noted that "no trust pays its beneficiaries on a daily basis.  The statute did not impose such an unrealistic requirement for a trust to become a QTIP."  *Howard,* 910 F.2d at 635.[25]  Our reading of the statute gives meaning to the statutory terms requiring annual or more frequent distribution, not daily disbursements.  *See Tramel v. Schrader,* 505 F.2d 1310, 1314 (5th Cir.1975) (citing cardinal rule that a statute should be construed such that no clause shall be superfluous).[26]

---

[23]*See also* Jacques T. Schlenger, et al., Trust was QTIP Even Though Stub Income Was Not Distributed to Spouse's Estate, 17 Est.Plan. 364 (1990) (stating that the Tax Court's decision in *Howard* caused practitioners to "scramble" to amend trusts that did not entitle the surviving spouse to the stub income).

[24]The Commissioner's position has been promulgated in a final regulation, 26 C.F.R. § 20.2044-1(d)(2), which is substantially the same as the position taken by the Commissioner here.

[25]*See also Clayton,* 976 F.2d at 1497 (citing *Howard* with approval on this issue).

[26]Fifth Circuit cases decided before October 1, 1981, are binding precedent in this circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Finally, a broad reading of the marital deduction provisions benefits the federal Treasury and furthers Congressional intent to ensure taxation of all previously deducted property. In the instant case, for example, the corpus of $2,829,610 would be subject to taxation, for a gain of over $1,000,000 in tax deficiencies. The Tax Court's opinion would grant similar estates a substantial windfall, encouraging other executors of wills to disclaim the previously taken deduction.[27]

For all of these reasons, we conclude that our interpretation of the statute will better serve the practical realities of trust administration and estate taxation.

## V.

After determining that the statutory language is ambiguous, we looked beyond the statute to additional sources of information, such as the legislative history. Careful consideration of these documents lead us to discern two purposes for the 1981 Act: treating the married couple as one economic unit, and expanding the deduction to include arrangements that divest the surviving spouse of control over property. These Congressional goals are best served by allowing the deduction in the decedent's estate and requiring subsequent inclusion in the surviving spouse's estate when trust documents do not grant control over the stub income to the surviving spouse. Accordingly, we REVERSE the Tax Court.

---

[27]*See Shelfer,* 91 T.C. at 23-24 (Beghe J., dissenting) ("The majority's decision in this case, if allowed to stand, means that, for Quincy State Bank and its clients:  "The game is done! I've won, I've won!' ").