David TALMAN, Executor Under the Will of Sara P. Talman, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–673T.

United States Court of Federal Claims.

April 23, 1997.

Jay Z. Aframe, Worcester, Massachusetts, for plaintiff.

Elizabeth D. DePriest, with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, Chief, and William K. Drew, Senior Trial Attorney, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

### I.

In this tax refund action, plaintiff, David A. Talman, as executor of the Estate of Sara P. Talman (the Estate), seeks a refund of $157,156.31 for federal estate taxes allegedly overpaid by the Estate. Plaintiff contends that when calculating the amount of estate taxes due, plaintiff mistakenly included as a part of the Estate the assets of a trust created by Sara Talman's husband, Harry J. Talman. Plaintiff originally treated the trust assets as a taxable part of the Estate on the ground that the trust constituted a "Qualified Terminable Interest Property" (QTIP) under I.R.C. § 2056(b)(7). Plaintiff later concluded that the trust did not satisfy the statutory requirements for a QTIP and, hence, should not have been included within the scope of the Estate but rather should have been included as a taxable part of the Estate of Harry J. Talman. Plaintiff filed a claim for refund of the estate taxes allegedly overpaid. After the Internal Revenue Service (IRS) disallowed plaintiff's claim, plaintiff filed the instant complaint. This action is before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment is denied and defendant's cross-motion is granted.

### II.

The material facts are not in dispute. On September 8, 1977, Harry Talman created the Harry J. Talman Trust, which was restated and amended in its entirety on December 11, 1981. This trust in turn created the Sara P. Talman Qualified Terminable Interest Trust (the Trust) which provided that upon Harry Talman's death, the trustees shall pay to Sara Talman "the entire net income of this trust fund not less frequently than quarter annually ... and ... such amount or amounts or all of the principal as the TRUSTEES ... shall deem necessary ... to provide for [Sara Talman's] health, maintenance and support in her accustomed manner of living." On December 20, 1984, Harry Talman died. Thereafter, up until Sara Talman's death, the trustees made the required payments to Sara Talman. At the time of her death, in addition to the principal of the Trust, the Trust contained interest that had accrued subsequent to the last distribution by the trustees. This undistributed interest is referred to as "stub income."

The Trust granted Sara Talman limited powers with respect to the distribution, upon her death, of the remaining Trust principal and stub income. The Trust provided that

these Trust assets would pass to Harry Talman's own issue but gave Sara Talman the authority to specify in her will the amount that each of Harry Talman's issue would receive as well as any limitations or conditions on the receipt of those assets. Sara Talman died on December 11, 1991. She did not, however, include in her will any provision addressing the distribution of the remaining trust assets. Therefore, upon her death, the remaining Trust assets, including the stub income, were distributed to Harry Talman's issue pursuant to a default provision in the Trust.

Plaintiff also served as the executor of the Estate of Harry Talman. When calculating the amount of estate taxes due on Harry Talman's estate, plaintiff treated the remaining Trust assets as a QTIP marital deduction and deducted those assets from the gross estate. As a result, the Estate of Harry Talman did not pay any estate taxes on the Trust assets. In its motion for summary judgment, plaintiff contends that the Trust assets did not qualify as a QTIP. If plaintiff is correct, then the Trust assets should have been included as a taxable part of the Estate of Harry Talman rather than the Estate of Sara Talman. The applicable statute of limitations, however, has run on the Estate of Harry Talman and the IRS could not now collect the additional taxes due from that estate.

### III.

I.R.C. § 2001 imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." The taxable estate of a decedent is calculated by subtracting from the gross estate any allowable deductions. I.R.C. § 2501. A marital deduction is allowed in an amount equal to the value of any interest in property that passes from a decedent to his or her surviving spouse. I.R.C. § 2056(a). When the surviving spouse does not receive an unrestricted interest in the property but rather only a terminable interest (*i.e.*, an interest that will terminate at a particular point in time or upon the occurrence or non-occurrence of a specified event), the general rule is that the total value of the property is

not deductible from the decedent's gross estate. I.R.C. § 2056(b)(1). Rather, the decedent's estate may claim a deduction only in the amount of the present value of the surviving spouse's terminable interest. I.R.C. § 2056(a).

The QTIP provisions, first enacted in 1981, constitute an exception to this general rule. I.R.C. § 2056(b)(7) provides that even when the surviving spouse's interest in the property is terminable, if the property satisfies the requirements for a QTIP, then the total value of the property is deductible from the predeceased spouse's estate. If the decedent's estate takes advantage of such a deduction and excludes the QTIP assets from the scope of the estate, then, pursuant to I.R.C. § 2044, the QTIP assets must be included as a taxable part of the estate of the surviving spouse. Hence, QTIP assets are subject to estate taxes, but only once.

The requirements for a QTIP are set forth in I.R.C. § 2056(b)(7)(B), as follows:

For purposes of this paragraph—

(i) **In general.**—The term "qualified terminable interest property" means property—

(I) which passes from the decedent,

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

(ii) **Qualifying income interest for life.**—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, . . . and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

### IV.

The parties' cross-motions for summary judgment involve an issue of statutory interpretation. Under I.R.C. § 2056(b)(7), to possess the requisite "qualifying income interest for life," Sara Talman must have been "entitled to all the income from the property,

payable annually or at more frequent intervals." The issue raised in the parties' cross-motions is whether, under this standard, Sara Talman's lack of absolute control over distribution of the stub income upon her death disqualifies the Trust assets as a QTIP. In arguing that Sara Talman's lack of such control precludes treating the Trust as a QTIP, plaintiff focuses on the phrase "all the income" in Section 2056(b)(7)(B)(ii)(I). Plaintiff argues that the interest that accrued after the last distribution by the trustees, *i.e.*, the stub income, constitutes Trust income, and because the Trust did not grant Sara Talman total control over the distribution of that income upon her death, the Trust did not give Sara Talman the requisite "entitle[ment] to all the income." Defendant's contrary interpretation focuses on the phrase "payable annually or at more frequent intervals" in that same section. Defendant interprets this phrase as further defining and limiting the preceding phrase "all the income" so as to require that the surviving spouse be entitled to receive all the income paid at the annual or more frequent distributions. Hence, under defendant's proposed interpretation, to qualify as a QTIP, it is sufficient that the Trust obliged the trustees to distribute all the Trust income at least annually because at the time of those distributions, Sara Talman was entitled to "all the income."

This identical issue of statutory interpretation has been addressed by other courts. In *Estate of Howard v. Commissioner*, 91 T.C. 329, 1988 WL 86347 (1988), the Tax Court adopted the interpretation of Section 2056(b)(7)(B) that plaintiff proposes which requires that the surviving spouse have the capacity, upon his or her death, to control the distribution of the stub income. On appeal, however, the Court of Appeals for the Ninth Circuit reversed the Tax Court's decision and adopted the interpretation that defendant proposes and concluded that it is sufficient that the surviving spouse is entitled to all the trust income at the time of the annual or more frequent distributions. *Estate of Howard v. Commissioner*, 910 F.2d 633, 635 (9th Cir.1990). In *Estate of Shelfer v. Commissioner*, 103 T.C. 10, 15–16, 1994 WL 373509 (1994), the Tax Court, with six of sixteen judges dissenting, reiterated the Tax Court's prior interpretation of Section 2056(b)(7)(B) in *Howard* and rejected the Ninth Circuit's approach. On appeal, the Court of Appeals for the Eleventh Circuit reversed the Tax Court's decision and adopted the same statutory interpretation as the Ninth Circuit in *Howard*. *Estate of Shelfer v. Commissioner*, 86 F.3d 1045, 1053 (11th Cir.1996). There is no controlling precedent on this issue in the Federal Circuit.[1]

## V.

■ As would be expected from the divergence of thought among the judges of the Tax Court and between the Tax Court and the Courts of Appeals for the Ninth and Eleventh Circuits, the wording of Section 2056(b)(7)(B) ultimately must be considered ambiguous. The statute does not specifically address stub income and the respective interpretations of the parties herein are each plausible. Based on the statutory wording above, it would be reasonable to interpret the statutory requirement that the surviving spouse be entitled to "all the income" either as including "all the income" earned by the trust during the surviving spouse's life, as plaintiff proposes, or, as defendant proposes, as including "all the income" that is distributed, at least annually, during the surviving spouse's life.

Given the ambiguity in the statutory wording, this court must look beyond the specific statutory words of Section 2056(b)(7)(B) to ascertain the appropriate interpretation. In *Shelfer*, the Eleventh Circuit purported to follow the general approach that the Supreme Court used when interpreting a similarly ambiguous tax provision in *Commissioner v. Engle*, 464 U.S. 206, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984). In determining the

1. The IRS ultimately enacted regulations that state that a trust does not fail to qualify as a QTIP merely because the trust does not require that the stub income be distributed to the surviving spouse or the surviving spouse's estate. Those regulations, however, apply prospectively to estates after March 1, 1994, and do not apply to the instant action. Treas. Reg. § 20.2044–1(d)(2).

appropriate interpretation of Section 2056(b)(7)(B), the Eleventh Circuit considered other related provisions in the Tax Code, the history and purpose of the ambiguous statutory provision, past practices, and the practical implications of the possible interpretations. The Eleventh Circuit had the benefit not only of the opinions of the Tax Court judges and the Court of Appeals for the Ninth Circuit, but also of a series of articles that analyze the issue at hand.[2] The Eleventh Circuit addressed the issue of the proper interpretation of Section 2056(b)(7)(B) in considerable detail and with considerable skill. Ultimately, this court finds portions of the Eleventh Circuit's approach compelling.

## VI.

This court will not repeat the facts and arguments presented in the Eleventh Circuit decision and refers the reader to the text of that opinion, *Shelfer*, 86 F.3d 1045. Therein, the plaintiff and defendant took the same respective sides of the argument as plaintiff and defendant take herein. In its consideration of related provisions of the Tax Code, the Eleventh Circuit considered the relevance of both Section 2056(b)(5) and the "flush language" of Section 2056(b)(7)(B)(ii).[3] Ultimately, the Eleventh Circuit concluded that neither provision was determinative when interpreting the disputed wording of Section 2056(b)(7)(B). *Shelfer*, 86 F.3d at 1047–48. This court agrees. Neither Section 2056(b)(5) nor the flush language of Section 2056(b)(7)(B)(ii) specifically addresses stub income or compels this court to choose one of the two possible interpretations of Section 2056(b)(7)(B).

Turning to the practical effects of the alternative interpretations, the Eleventh Circuit listed three alleged practical advantages that would result from defendant's interpretation of Section 2056(b)(7)(B): (1) greater certainty in estate planning; (2) greater con-

2. For example, the court in *Shelfer*, 86 F.3d at 1053, cites Jacques T. Schlenger et al., *Failure to Pay Stub Income to Estate Defeats QTIP Election*, 21 Est.Plan. 368 (1994) (analyzing the Tax Court decision in *Shelfer*), and Jacques T. Schlenger, et al., *Trust was QTIP Even Though Stub Income Was Not Distributed to Spouse's Estate*, 17 Est. Plan. 364 (1990) (analyzing the Ninth Circuit decision in *Howard*).

3. Section 2056(b)(5) allows a deduction for "property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest." The Senate report discussing Section 2056(b)(5) lists under separate subheadings the requirement that the surviving spouse be entitled to all of the income for life and the prerequisite that the income must be paid annually or at more frequent intervals. *Howard*, 91 T.C. at 333 (citing S.Rep. No. 80–1013, pt. 2, at 16–17 (1948)). The plaintiff in *Shelfer* argued that this separate treatment in the Senate report demands the conclusion that when Congress used the same general wording in Section 2056(b)(7), Congress intended the two requirements similarly to be distinct. The Eleventh Circuit disagreed. The court explained that the presumption that the same words in different parts of the same statute have the same meaning is rebuttable, and concluded that the presumption was rebutted therein. The court pointed to the significant period of time that had passed between the enactment of Section 2056(b)(5) and Section 2056(b)(7) and the fact that the QTIP provisions constituted a major break with past practice. The court explained: "The whole purpose of § 2056(b)(7) was to eliminate the requirement that the surviving spouse retain control of all of the property as was previously required under § 2056(b)(5)." *Shelfer*, 86 F.3d at 1051.

The so-called "flush language" of Section 2056(b)(7)(B)(ii) is the wording underscored below:

The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, ... and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse.

(Emphasis added.) In *Shelfer*, the defendant argued that the "flush language" allows the decedent to appoint the trust property to another beneficiary after the death of the surviving spouse and that this language also refers to disposition of stub income after the surviving spouse's death. Stub income, however, is covered under subsection (ii)(I) and the flush language references subsection (ii)(II). In rejecting the defendant's argument, the Eleventh Circuit reasoned: "Although the flush language limiting subclause (ii)(II) is consistent with the Commissioner's argument, it does not directly apply to the independent requirement in subclause (ii)(I), ... which remains ambiguous." *Shelfer*, 86 F.3d at 1048.

sistency with standard trust practices; and (3) furthering congressional intent that all previously deducted property be taxed. *Id.* at 1053.[4] Practical advantages can be relevant when interpreting an ambiguous tax provision to the extent that it is reasonable to conclude that Congress considered those advantages when enacting the statute. This court, however, does not base its agreement with the Eleventh Circuit on these arguable advantages but rather on the Eleventh Circuit's discussion of Congress' purpose in enacting Section 2056(b)(7).

As the Eleventh Circuit explains, when Congress enacted the Economic Recovery Act of 1981, it made two related changes with respect to the marital deduction. *Shelfer,* 86 F.3d at 1049. First, as generally described above, Congress allowed the estate of the predeceased spouse to include within the marital deduction assets in which the surviving spouse has only a terminable interest, so long as the assets qualify as a QTIP. H.R.Rep. No. 97–201, at 159 (1981). Second, Congress removed the pre-existing monetary ceiling on the amount of a marital deduction and allowed the predeceased spouse's estate to take an unlimited deduction for all assets transferred to the surviving spouse. *Id.* at 160. Prior to this second change, a marital deduction was limited to the greater of $250,-000 or one-half of the decedent's adjusted gross estate. *Id.* at 158.[5] Hence, with respect to assets that qualify as a QTIP, the net effect of these two changes made in the 1981 legislation was to allow a full marital deduction from the taxable estate of the predeceased spouse for all assets that qualify as a QTIP, regardless of the amount of the assets.

In reviewing the legislative history to assess Congress' rationale for making these changes, the Eleventh Circuit concluded that Congress' decision to make QTIP assets eligible for a marital deduction was in part in response to the growing divorce and remarriage rates in the United States. *Shelfer,* 86 F.3d at 1049. As noted above, the pre-existing law generally allowed a limited marital deduction only for unrestricted transfers to a spouse. H.R.Rep. No. 97–201 at 158. Congress was concerned that this limitation often forced individuals, when determining how to dispose of their assets upon death, to choose between their children and their spouses. *Id.* at 160. If an individual chose to leave the assets outright to his or her present spouse and take advantage of the marital deduction, the individual would risk leaving his or her children from a prior marriage without any assets. *Id.* If the individual chose instead to provide a certain amount of funds directly to his or her children, those funds would not be available to the spouse in the event additional funds were required for the spouse's support and, hence, the individual would risk underendowing his or her spouse. *Id.* The Eleventh Circuit concluded that Congress created the QTIP deduction to allow a decedent to provide for both children and spouse by allowing a marital deduction for assets in

4. The Eleventh Circuit suggested that the defendant's reading of the statute would ensure greater certainty in estate planning because a taxpayer would qualify for QTIP tax treatment if he or she followed the interpretation of Section 2056(b)(7)(B) that has been enunciated by the Commissioner of the IRS. As to comporting with standard trust practices, the Eleventh Circuit reasoned that under the plaintiff's interpretation, a trust such as the instant trust could qualify for QTIP treatment only if the trust income is distributed on a daily basis so that there would be no undistributed income at the time of the surviving spouse's death. The Eleventh Circuit went on to explain that " 'no trust pays its beneficiaries on a daily basis. The statute did not impose such as unrealistic requirement for a trust to become a QTIP.' " *Id.* (quoting *Howard,* 910 F.2d at 635). As to furthering congressional intent concerning prior deductions, the Eleventh

Circuit reasoned that the defendant's interpretation would ensure that all QTIP assets previously deducted would be subject to a transfer tax before the assets leave the marital unit. Under the plaintiff's interpretation, no such estate taxes would ever be paid under circumstances such as involved in the instant case. In such a case, where a QTIP deduction previously was allowed for the predeceased spouse's estate but after the death of the surviving spouse it is determined that the taxes should have been assessed on the predeceased spouse's estate, the IRS no longer would be able to collect back taxes from the predeceased spouse's estate because the statute of limitations on that estate already has run.

5. This amount would be adjusted down by the amount the decedent had exceeded the $100,000 cap on tax-free gifts to the surviving spouse. *Id.*

which the decedent gives the spouse only a life interest. *Id.*

Turning to Congress' rationale for removing the pre-existing limitation on the amount of a marital deduction, the Eleventh Circuit concluded that Congress believed "that a husband and wife should be treated as one economic unit for purposes of estate and gift taxes, as they generally are for income tax purposes." *Shelfer*, 86 F.3d at 1049 (citing S.Rep. No. 97–144, at 127 (1981), *reprinted in* 1981 U.S.C.C.A.N. 105, 228).

After assessing the congressional purpose behind the two related changes affecting the marital deduction, the Eleventh Circuit then analyzed the two possible interpretations of Section 2056(b)(7)(B) and concluded that the interpretation proffered by the defendant in *Shelfer* "best comports with [Congress'] goals [of] expanding the marital deduction to provide for the spouse while granting the decedent more control over the ultimate disposition of the property, and treating a husband and wife as one economic entity for the purposes of estate taxation." *Id.* at 1049–50.

With respect to Congress' goal of expanding the marital deduction while granting the decedent more control over disposition of the property, the Eleventh Circuit reasoned:

Under the [defendant's] interpretation of the statute, the decedent would gain the tax benefit, retain control of the trust corpus, and provide the spouse with all of the periodic payments for her personal support. The stub income, which accrues after her death and is thus not used for her maintenance, could be appointed to someone else. This result is consistent with the statutory goals of expanding the deduction while providing for the spouse's support. In contrast, the [plaintiff's] reading of the statute would condition the tax benefit for the entire trust corpus on ceding control over a much smaller amount that is not needed for the spouse's support.

*Id.* at 1050 (footnote omitted). With respect to Congress' goal of treating a married couple as one economic entity, the court stated:

The statute's second goal, treating a married couple as one economic entity, was effected in a comprehensive statutory scheme. In addition to the QTIP provisions of § 2056(b)(7), Congress added § 2044, which requires the estate of the surviving spouse to include all property for which a marital deduction was previously allowed, and § 2056(b)(7)(B)(v), which states that a QTIP "election, once made, shall be irrevocable." Taken together, these sections of the code provide that assets can pass between spouses without being subject to taxation. Upon the death of the surviving spouse, the spouse's estate will be required to pay tax on all of the previously deducted marital assets. The [defendant's] position comports with the statutory scheme because it compels the surviving spouse to abide by the irrevocable election of a QTIP trust and to pay taxes on property that had previously been subject to a deduction.

*Id.* (footnotes omitted).

This court agrees with the Eleventh Circuit's conclusion that the defendant's interpretation of Section 2056(b)(7)(B) better serves Congress' dual purposes in the Economic Recovery Act of 1981.[6] Plaintiff's contrary argument in effect rests on the contention that Congress would have been sufficiently concerned about whether the heirs of the predeceased spouse or the heirs of the surviving spouse ultimately inherit the stub income that it would condition the allowance of a QTIP marital deduction on the surviving spouse having control over such income. But it is not apparent why Congress would have a compelling interest in which set of heirs received the stub income.

As summarized above, Section 2056(b)(7) represents a major change in estate taxation. Apparently for the first time, Congress allowed a decedent's estate to claim a marital deduction for the full value of a trust even

---

6. Because the court has adopted defendant's proposed interpretation of Section 2056(b)(7)(B), the court need not address defendant's alternative argument raised in its cross-motion for summary judgment that because plaintiff served as the executor and is a beneficiary of both the Harry Talman and Sara Talman Estates, plaintiff should be compelled to include the QTIP assets as a taxable part of Sara Talman's Estate.

when the surviving spouse is given only a lifetime interest in the trust assets and does not receive absolute control over distribution of the assets. Having determined to allow a potential marital deduction for the entire amount of the trust even though the decedent maintains control over who ultimately will inherit the trust principal, it is not apparent why Congress would then draw the bright line that plaintiff proposes and deny a marital deduction simply because the decedent, who has maintained control over the ultimate distribution of the entire trust principal, also has maintained control over the distribution of stub income.

It would seem that Congress would not have drawn such a line based on a concern as to the total amount of estate taxes paid. In enacting the QTIP provisions, Congress decided to allow, in defined circumstances, the deferring of estate taxes until after the death of the surviving spouse. Interpreting the QTIP provisions to encompass situations where the surviving spouse does not have control over disposition of stub income would not result in any further decrease in estate taxes because under I.R.C. § 2044, the stub income would be included as a taxable part of the surviving spouse's estate regardless of whether the predeceased spouse or the surviving spouse controlled distribution of the stub income upon the surviving spouse's death. *See* Treas. Reg. § 20.2044–1(d)(2). Congress also would not have drawn such a line based on a concern as to the amount of money available for the surviving spouse's support. Congress addressed this concern when it required that in order to qualify as a QTIP, the trust income must be made available for the spouse's support at least annually.

The line plaintiff proposes also does not gain any support from Congress' intention that a married couple be treated as a "single economic unit" for estate tax purposes. The couple would be treated as a single economic unit so long as the predeceased spouse's estate is not required to pay any taxes on the trust property for which a marital deduction was claimed and taxes on that property are paid for the first time by the surviving spouse's estate. It would not be pertinent in

this regard which spouse determined to whom the stub income ultimately would be distributed. In addition, it would not seem reasonable, in the absence of some compelling legislative history, to interpret plaintiff's proposed line as involving a compromise in which, when fashioning the requirements for a QTIP, Congress decided to allow the decedent to control the ultimate distribution of the principal of the trust but not the ultimate distribution of the stub income. The amount of the stub income would seem too unpredictable and comparatively insignificant to serve as a reasonable basis for such a compromise. In this regard, the stub income would be zero if no income accrued between the time of the last distribution and the death of the surviving spouse, and in any event, typically would constitute at most a small fraction of the amount of the principal of the trust.

In sum, like the Courts of Appeals for the Ninth and Eleventh Circuits, this court concludes that Congress' purposes when enacting Section 2056(b)(7) are better served by interpreting the ambiguous phrase "all the income" in Section 2056(b)(7)(B)(ii)(I) to refer to all the trust income paid in annual or more frequent distributions.

*Conclusion*

For the reasons set forth above, plaintiff's motion for summary judgment is denied and defendant's cross-motion is granted. The Clerk of the Court shall enter judgment dismissing plaintiff's complaint. No costs.

**IT IS SO ORDERED.**