149 N.J. 591 (1997)
695 A.2d 250
IN THE MATTER OF THE MARITAL DEDUCTION TRUST UNDER WILL OF HERBERT J. ADAIR, DECEASED.
J. SUSAN EMILIO, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DELIA DAVID ADAIR, DECEASED, PLAINTIFF-APPELLANT,
v.
PNC BANK, N.A., AS TRUSTEE OF THE MARITAL DEDUCTION TRUST UNDER WILL OF HERBERT J. ADAIR, DECEASED, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued April 29, 1997.
Decided June 27, 1997.
*593 Martin A. Heckscher, a member of the Pennsylvania bar, argued the cause for appellant (Steven K. Kudatzky, attorney).
Sean T. O'Meara argued the cause for respondent (Archer & Greiner, attorneys).
The opinion of the Court was delivered by GARIBALDI, J.
In this appeal, the primary issue is whether the estate of Delia D. Adair, the surviving spouse of Herbert J. Adair and the income beneficiary of a QTIP trust established under his will, may recover from the remaindermen of that trust Florida estate taxes attributable to the inclusion of the QTIP trust in her estate.
Florida estate tax attributable to a QTIP trust is to be equitably apportioned among the recipients of that trust, unless the payment of the tax is "otherwise directed by the governing instrument" of the testator. F.S.A. § 733.817(1)(e). Therefore, we must decide whether Mrs. Adair, in her will and standby trust agreement, "otherwise directed" against statutory tax apportionment so that the state death taxes attributable to the inclusion of the QTIP assets in her estate must be paid from her residuary estate. The practical effect of that decision will determine whether the remainderman of the QTIP trust, the children of Mr. Adair's first marriage, will pay the approximate $1.1 million Florida estate tax owed on the QTIP trust, or whether the heirs of Mrs. Adair, her niece and nephew, will pay that sum from her residuary estate, and reduce their inheritance.

*594 I
Herbert J. Adair, a resident of New Jersey, died on December 10, 1985. He was survived by his second wife, Delia D. Adair, and three adult children from his first marriage. The Adairs had no children of their own. At the time of his death, Mr. Adair's estate was worth approximately $15,000,000.
By will, Mr. Adair created a marital trust of approximately $6,000,000 for the benefit of his wife. Mr. Adair's executors elected to qualify that trust as a "qualified terminable interest property" (QTIP) under I.R.C. § 2056(b)(7). That election deferred the tax on the trust until Mrs. Adair's death. Mrs. Adair's sole interest in that trust was to receive the income for life. She never owned or had any right to the principal of that trust. She could not expend it for herself or direct its disposition at her death. PNC Bank was named Trustee of that trust.
In accordance with Mr. Adair's will, the QTIP trust terminated upon Mrs. Adair's death and Mr. Adair's children received the remaining principal. The will also directed Mr. Adair's trustees to pay any federal taxes due on the trust from the trust principal before distributing the balance to the children. The will did not, however, mention the payment of state death taxes.
At the time Mr. Adair filed his will, the QTIP statute was new. Rather than risk possible loss of the federal tax deduction, Mr. Adair's attorneys thought it prudent to leave the will silent regarding the payment of state taxes and await judicial interpretation of the QTIP trust's relationship to state estate tax laws.
In order to reduce her estate tax burden, Mrs. Adair moved to Palm Beach, Florida after Mr. Adair's death. During her marriage, Mrs. Adair had executed several wills. In earlier versions, Mrs. Adair had bequeathed her estate to Mr. Adair's children. However, her relationship with his children became strained and increasingly hostile. Indeed, even before Mr. Adair's death, Mrs. Adair altered the principal beneficiaries of her will from Mr. Adair's three children to her own relatives.
*595 After her move to Palm Beach, Mrs. Adair prepared a new will in January 1989. In that will, as in earlier versions, Mrs. Adair indicated that Mr. Adair's QTIP trust would pay any taxes related to its inclusion in Mrs. Adair's estate. Mrs. Adair prepared another will in February 1990. Mr. Adair's children were clearly disinherited in that will, and the primary beneficiaries were Mrs. Adair's sister Eleanor, niece J. Susan Emilio, and nephew Edward H. Korn. That will also contained a clause directing the QTIP trust to pay its own taxes. On April 19, 1990, Mrs. Adair prepared a final will and standby trust that contained no reference to the QTIP trust. Those documents were in effect at her death.
Mrs. Adair died on January 5, 1993, a resident of Palm Beach County, Florida. Plaintiff, J. Susan Emilio, her niece, was appointed personal representative of her estate.
At the time of Mrs. Adair's death, the QTIP trust was valued at $7,841,097 and became included in her gross estate for federal estate tax purposes. I.R.C. § 2044. The aggregate federal estate taxes attributable to that trust were $4,390,560; $3,296,282 attributable to the federal estate tax and $1,094,278 owed to the State of Florida as part of the "federal state death tax credit." PNC paid the federal estate tax, $3,296,282, out of the QTIP trust. The federal estate tax is not at issue.
Although there is no federal deduction for state inheritance or state estate taxes, I.R.C. § 2011 provides a maximum dollar-for-dollar credit against the federal estate tax for any state inheritance taxes or state estate taxes paid. The amount of that "state death tax credit" is determined by the amount of the federal gross estate. I.R.C. § 2011(b). States can adopt estate tax schemes (called "sponge" or "slack" taxes) in order to take advantage of that revenue-sharing mechanism. Florida has adopted such a tax.[1] If a state does not enact such a tax, the full amount would *596 be paid to the federal government. 5 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts § 132.4, at 123-24 (2d ed. 1993) ("The credit can be viewed as a rudimentary revenue-sharing device, by which the federal government diverts funds to the states."); see also Department of Revenue v. Golder, 326 So.2d 409 (Fla. 1976) (finding Florida estate tax exists so long as estate revenue-sharing exists, and holding any tax in excess of federal credit violates state constitution).
PNC refused to pay the State of Florida the "federal state death tax credit" of $1,094,278. Mrs. Emilio (to avoid penalties and interest) paid that state tax out of the separate assets of Mrs. Adair's estate.
PNC filed a declaratory judgment action to determine whether the accrued Florida estate taxes attributable to the QTIP trust should be paid out of the QTIP trust. Plaintiff then filed her own complaint, claiming reimbursement from the QTIP trust for the death taxes already paid to the State of Florida out of Mrs. Adair's standby trust. Both parties moved for summary judgment. The trial court granted PNC's motion for summary judgment, finding that Mrs. Adair's standby trust clearly indicated responsibility for taxes on non-probate property such as the QTIP trust.
The Appellate Division, in an unpublished opinion, affirmed. The panel, applying Florida's "apportionment" statute,[2] held that the language in Mrs. Adair's standby trust, indicating that taxes *597 will be paid from her estate for all property "whether or not" passing under the will, applied to the QTIP trust. The panel concluded that this language "clearly and unequivocally" encompassed non-probate assets, including the principal of the QTIP trust, and represented an unambiguous direction that Mrs. Adair's standby trust would assume the burden of paying the Florida death taxes due on the QTIP trust.
We granted plaintiff's petition for certification, but denied PNC's cross-petition for certification on the issue of Florida's jurisdiction to tax a New Jersey trust. 147 N.J. 263, 686 A.2d 764 (1996). We now reverse.

II
In 1981, the Internal Revenue Code was amended, as part of the Economic Recovery Tax Act (ERTA) to include Section 2056(b)(7)(B), which in effect created the QTIP trust. Before the passage of ERTA, the Code allowed a maximum marital deduction of 50% of the value of the estate of the first spouse to die and that deduction was available only in circumstances where the surviving spouse was given control over the disposition of the marital property at the time of the surviving spouse's death. However,
[a]s divorce and remarriage rates rose, Congress became increasingly concerned with the difficult choice facing those in second marriages, who could either provide for their spouse to the possible detriment of the children of a prior marriage or risk under-endowing their spouse to provide directly for the children. In the Economic Recovery Act of 1981, Congress addressed this problem by creating the QTIP exception to the terminable property interest rule. According to the House of Representatives Report, the QTIP trust was designed to prevent a decedent from being `forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children.'
[Estate of Shelfer v. C.I.R., 86 F.3d 1045, 1049 (11th Cir.1996) (citations omitted).]
Thus, a decedent can now provide for a surviving spouse while controlling the ultimate disposition of the property after the surviving spouse's death. See generally Ibid. (stating "the ... QTIP trust provisions ... liberalize[d] the marital deduction to cover trust instruments that provide ongoing income support for *598 the surviving spouse while retaining the corpus for the children or other beneficiaries").
Section 2056(b)(7)(B)(i) of the Code defines "qualified interest trust property" as property 1) passing from a decedent to a surviving spouse, 2) in which the surviving spouse has a qualified interest for life, and 3) for which an election was made at the time of payment of the decedent's estate taxes. The value of QTIP property is deducted from the decedent's gross estate, and no taxes are paid on it at the decedent's death. I.R.C. § 2056(a). The tax owed on the QTIP property is deferred until the death of the surviving spouse, at which point the QTIP property is included within the surviving spouse's gross estate. I.R.C. § 2044.
Section 2207A(a)(1) of the Code provides that the estate of the surviving spouse has the right to recover from the recipients of the QTIP principal the amount by which the total federal estate tax exceeds the tax that would have been payable if the QTIP trust had not been included in the gross estate. Such recovery does not apply, however, "if the decedent otherwise directs by will." I.R.C. § 2207A(a)(2).

III
State law controls the apportionment of state estate tax liability. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); In re Estate of Penney, 504 F.2d 37, 40 (6th Cir.1974).
The Florida apportionment statute provides, in relevant part:
[T]he balance of the net amount of the tax.... shall be equitably apportioned among, and paid by, the recipients and beneficiaries of the properties or interests, in the proportion that the value of the property or interest of each included in the measure of the tax bears to the total value of all the properties and interests included in the measure of the tax, except as otherwise directed by the governing instrument.
[F.S.A. § 733.817(1)(e).]
Under that section, the estate of a surviving spouse may recover from the QTIP trust the proportional amount by which the Florida *599 estate tax is increased due to the inclusion of the value of that QTIP trust in the surviving spouse's estate. That statute creates a presumption in favor of apportionment that can only be overcome if the surviving spouse "otherwise direct[s]" by an appropriate governing instrument. A direction against apportionment
may be explicit or implicit from the terms of the governing instrument, but must be clear and unequivocal; provided, however, that an implicit direction against apportionment is not sufficient to avoid the apportionment under state or applicable federal law unless the court also finds that the testator considered and made a deliberate and informed decision about the burden of taxation.
[F.S.A. § 733.817(2)(d).]
That section essentially codifies a test originally articulated in Ferrone v. Soffes, 558 So.2d 146 (Fla. Dist. Ct. App. 1990). The Ferrone court interpreted an earlier version of F.S.A. § 733.817 that did not contain the "explicit and implicit" distinction, but provided an "otherwise directed" exception to avoid the application of the apportionment statute. Id. at 147.
The testator's will provided that the executor would pay "all debts allowed as claims against my estate, my funeral expenses, and all expenses of administration of my estate, and all estate, inheritance, succession, and transfer taxes which may be assessed by reason of my death." Ibid. The question before the court was whether that language sufficiently overcame the presumption of apportionment, as applied to jointly held property that passed to other tenants by right of survivorship at the time of death.
In assessing the "otherwise directed" exception to Florida's apportionment statute, the court stated:
the statute requires ... a clear and unequivocal direction in the will in order to require the estate to bear the burden of taxation for property outside the will. Although no particular form of words is required, the intention to shift the burden of taxation must clearly appear.
[Ibid.]
To meet that burden, the court concluded that the "will must expressly refer to the statute, or expressly indicate that the estate is to bear the burden of taxation for property passing outside the will." Ibid. According to the court, requiring such unequivocal language would make it "unmistakably clear that the testator *600 considered the issue and made a deliberate decision about the burden of taxation." Ibid.
Applying those principles to the testator's will, the court held that the relevant language was insufficient to direct against apportionment for non-probate property such as joint tenancies. As such, the court remanded for an evidentiary hearing that would consider external evidence to clarify ambiguities found in the testamentary language. Id. at 148; see also First Nat'l Bank of Fla. v. Moffett, 479 So.2d 312 (Fla. Dist. Ct. App. 1985) (holding construction of instrument necessary in face of ambiguous language).

IV
The critical issue presented in this case is whether Mrs. Adair's will and standby trust evinces a "clear and unequivocal" direction to overcome the presumption of apportionment. If so, the principal beneficiaries of the QTIP trust are exonerated from paying their pro-rata shares of the Florida estate tax in compliance with F.S.A. § 733.817(2)(d).
According to the terms of her April 1990 will, Mrs. Adair's assets not otherwise distributed by the will's terms "poured-over" to her trust. Through her will, Mrs. Adair directed the personal representative to seek payment from the trustee of her standby trust of
such amount or amounts as my Personal Representative, in her judgment, may determine to be required for the payment of debts, funeral and administration expenses, in connection with the administration of my Estate and Estate and like taxes payable by reason of my death.
In addition, the standby trust provided:
All estate, inheritance, succession and other death taxes, including any interest or penalties thereon, imposed or payable by reason of [Mrs. Adair's] death with respect to all property comprising his [sic] gross estate for death tax purposes, whether or not such property passes hereunder, shall upon the written request of the Personal Representative of [Mrs. Adair's] estate [sic] be paid to such Personal Representative ... out of the principal of the trust estate. The Trustee shall not be responsible for the determination of such taxes, nor shall the Trustee be *601 required to determine or inquire into the availability of funds for such purposes from [Mrs. Adair's] probate estate.
We observe that those documents were drafted by a Florida attorney who had not prepared any of Mrs. Adair's prior wills. Mrs. Adair's Florida attorney testified that the April 1990 will and trust did not contain language relating to the QTIP trust because those documents were designed in the event that Mrs. Adair became incapacitated and not as an estate plan. He testified that he did not discuss tax issues with Mrs. Adair.
An explicit direction against apportionment can be determined from the language of a governing instrument. When only an implicit direction against apportionment exists, however, the presumption against apportionment is overcome only where the testator made a "deliberate and informed decision" about the burden of taxation. F.S.A. § 733.817(2)(d). In that analysis, extrinsic evidence beyond the four corners of the pertinent testamentary documents is relevant. Whether the direction against apportionment is either explicit or implicit, in either case, it must be clear and unequivocal.
The only reported case interpreting the Florida amended apportionment statute in the context of QTIP trusts is Fort Wayne National Bank v. Barnett Banks Trust Co., 637 N.E.2d 1301 (Ind. Ct. App. 1994). The facts there were very similar to the facts in this case. The decedent, Maurice, and his spouse, Louise, were married and had no children, but Louise had a child from a previous marriage. Id. at 1303. Maurice established a QTIP trust in favor of Louise. Ibid. After Maurice's death, Louise moved to Florida and executed a will and trust that revoked her prior wills. Ibid. Her new will provided:
I direct that all estate, inheritance, succession and other death taxes of any nature ... with respect to property passing under this will or any other property, shall be considered a cost of administration of my estate, and that such taxes, together with all debts I am legally obligated to pay at the time of my death ... shall be paid out of my residuary estate without apportionment.
[Id. at 1304 (emphasis added).]
*602 Louise's trust indicated that she designed her estate plan to provide "maximum financial security" to her beneficiary, her daughter. Ibid. The trustee for Louise's estate argued that because Louise was not obligated, under Florida law or the Internal Revenue Code, to pay the taxes on the QTIP Trust unless she "otherwise directed," she could not be legally obligated to pay the tax. Ibid. Therefore, there was an ambiguity in the will's terms with regard to apportionment. Maurice's trustee argued that there was no ambiguity in the will. Ibid.
Finding sufficient ambiguity to allow external evidence of Louise's intent to apportion, the court concluded:
it is clear that the words `which I am legally obligated to pay' modify the direction within the paragraph. Because Louise's estate was entitled to recover the incremental federal tax attributable to the value of the QTIP property, the plain meaning of the qualification is readily susceptible to a reading that she did not direct the payment of taxes attributable to the QTIP property. Thus, an ambiguity exists.
[Ibid. (citing Ferrone, supra, 558 So.2d at 147).]
External evidence convinced the court that Louise did not intend to pay the QTIP taxes out of her estate. Id. at 1305.
In this case, neither Mrs. Adair's will nor standby trust explicitly or implicitly "otherwise directed" against apportionment. Mrs. Adair's will merely directed her personal representative to request payments from her standby trust of such an amount as the personal representative, "in her judgment, may determine to be required for the payment of debts, funeral and administration expenses, in connection with the administration of my Estate and Estate and like taxes payable by reason of my death". That provision does not direct her personal representative actually to pay any death taxes. In fact, the word "required," as used in Mrs. Adair's will, can only mean debts and death taxes that Mrs. Adair's estate would be "legally obligated to pay." Thus, as in Fort Wayne, an ambiguity exists in the will and extrinsic evidence should be considered to determine whether Mrs. Adair intended to "otherwise direct" against apportionment.
*603 In her standby trust, Mrs. Adair did not direct her trustee to pay the Florida estate taxes. The trustee was directed to pay to Mrs. Adair's personal representative only such funds as she requests for the payment of taxes. There is no direction, however, for the trustee to pay any death taxes to the taxing authorities.
The tax provisions in Mrs. Adair's standby trust and will are generic, boilerplate provisions. For example, the trust agreement refers to Mrs. Adair in the masculine. Additionally, the paragraphs of Mrs. Adair's will were misnumbered. Such generalized instructions do not evince a clear and unequivocal intention by Mrs. Adair to "otherwise direct" the pro rata apportionment of Florida estate taxes on estate property. See Estate of Swallen v. C.I.R., 98 F.3d 919, 924-25 (6th Cir.1996) (holding boilerplate tax clause does not present clear direction and is ambiguous). Furthermore, we find no implicit direction to pay such taxes from her residuary estate. Thus, the lack of an express or implied direction against apportionment precludes a finding that Mrs. Adair "made a deliberate and informed decision about the burden of taxation." Indeed, all the evidence of her intent points in the opposite direction.
We conclude, therefore, that there is no explicit or implicit direction in Mrs. Adair's testamentary documents that statutory apportionment should not apply. Our conclusion is in harmony not only with decisions interpreting Florida law, Fort Wayne and Ferrone, but also with other states that have addressed the issues raised in this case. For example, in In re Estate of Gordon, 134 Misc.2d 247, 510 N.Y.S.2d 815 (N.Y.Sur.Ct. 1986), at issue was a New York estate law provision that was adopted specifically to cover QTIP trusts. The statute contained a presumption for apportionment unless the testator "otherwise directed." Id. 510 N.Y.S.2d at 817.
In that case, the testator's will contained language very similar to the language relied on by the lower courts in this case. The will directed that death taxes be paid by the residuary estate "whether such property passes under or outside my will." Ibid. *604 That language, according to the court, was insufficient to direct against apportionment because an explicit reference to QTIP property was absent. Id. at 818. In the absence of such an express reference, the presumption that "most testators do not intend to apply a general tax exoneration clause to QTIP property" was not overcome[3]. Ibid.; see also In re Estate of Kramer, 203 A.D.2d 78, 610 N.Y.S.2d 31 (1994) (ordering apportionment based on lack of explicit mention of QTIP trust, even though testatrix explicitly ordered apportionment for other types of non-probate property).
Gordon exemplifies the view in a majority of jurisdictions requiring explicit reference to QTIP property in tax apportionment clauses. See, e.g., Estate of Vahlteich v. Commissioner, 95-2 U.S.T.C. ¶ 60,218, 1995 WL 641318 (6th Cir.1995) (interpreting Ohio statute, Ohio Rev. Code Ann. § 2113.86(I), and finding decedent's estate need not pay wife's QTIP trust taxes); Branch Banking & Trust Co. v. Staples, 120 N.C. App. 227, 461 S.E.2d 921 (applying apportionment statute and finding express direction for apportionment against QTIP trust), review denied, 342 N.C. 190, 463 S.E.2d 233 (1995); Firstar Trust Co. v. First Nat'l Bank of Kenosha, 188 Wis.2d 468, 525 N.W.2d 53 (App. 1994) (applying Gordon and holding absent explicit direction, general "pay all taxes" clause does not include tax on non-probate property), aff'd in part, rev'd in part, 197 Wis.2d 484, 541 N.W.2d 467 (1995); Cf. In re Estate of Miller, 230 Ill. App.3d 141, 172 Ill.Dec. 269, 595 N.E.2d 630 (interpreting clause requiring payment of taxes caused by testatrix's death as "unambiguous" and clearly including QTIP trust taxes), appeal denied, 146 Ill.2d 628, 176 Ill.Dec. 799, 602 N.E.2d 453 (1992).

V
There is nothing in Mrs. Adair's will or standby trust that evidences an intention to exonerate her stepchildren from contributing *605 their share of the tax. The sole beneficiaries under her will and standby trust are her relatives, primarily her niece, J. Susan Emilio, and her nephew, Edward H. Korn. Indeed, the record is replete with the bitter feelings between Mrs. Adair and Mr. Adair's children. It defies logic and common sense to conclude that Mrs. Adair, who bitterly disliked Mr. Adair's children, intended to exonerate them from paying the Florida estate tax on the QTIP trust, so that her heirs (her niece and nephew) would instead have to pay the $1.1 million in death tax on the QTIP trust from their inheritance.
Accordingly, the court finds that Mrs. Adair did not, in her will or standby trust, exonerate the beneficiaries of the QTIP trust from contributing their share of taxes.
The judgment of the Appellate Division is reversed.
For reversal  Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN  7.
Opposed  None.
NOTES
[1] Section 198.02 of the Florida State Tax Code provides as follows:

A tax is imposed upon the transfer of the estate of every person who, at the time of death, was a resident of this state, the amount of which shall be a sum equal to the amount by which the credit allowable under the applicable federal revenue act for estate, inheritance, legacy, and succession taxes actually paid to the several states exceeds the aggregate amount of all constitutionally valid estate, inheritance, legacy, and succession taxes actually paid to the several states of the United States (other than this state) in respect of any property owned by such decedent or subject to such taxes as a part of or in connection with his estate. All values shall be as finally determined for federal estate tax purposes.
[F.S.A. § 198.02.]
[2] F.S.A. § 733.817(1) (stating estate taxes will be "apportioned" from the assets of the instrument being taxed, unless the testator "otherwise directs").
[3] Following Gordon, New York amended its estate law to reflect the court's holding. See N.Y. Est. Powers & Trusts § 2-1.8(d)(1).