In the Matter of the ESTATE OF Marian P. KLARNER, Deceased–Impartial.

Carol Shirley and Linda Turnwall, Appellants,

v.

Katz, Look & Moison, P.C., Appellee,

and

Arthur L. Daley and Denis F. Daley, Trustees–Appellees.

No. 02CA2077.

Colorado Court of Appeals, Div. III.

Nov. 20, 2003.

As Modified on Denial of Rehearing March 11, 2004.

Certiorari Granted Oct. 4, 2004.

Waller and Mark, P.C., William C. Waller, Jr., Greenwood Village, Colorado, for Appellants.

Katz, Look & Moison, P.C., Michael M. Katz, David J. Tappeiner, for Appellee and Trustees–Appellees.

Opinion by Judge TAUBMAN.

Carol Shirley and Linda Turnwall, beneficiaries of a trust, appeal the probate court's order instructing the trustees to use trust assets to pay state and federal estate taxes and administrative costs. We reverse and remand.

Albert C. Klarner and Marian P. Klarner were married in the State of Colorado. This was the second marriage for both of them, and each of them had two children from their previous marriages. Albert had two daughters, Shirley and Turnwall (Albert's daughters). Marian had two sons, Arthur L. Daley and Denis F. Daley (Marian's sons). Albert and Marian did not have children from their marriage.

In 1979, Albert created a revocable living trust, which provided for the creation of a Marital Trust and a Family Trust upon his death. In 1982, Albert amended his trust agreement and split the Marital Trust into two shares. The income from both Marital Trust shares was to be paid to Marian during her lifetime. However, Marian had the right to demand distribution of the principal of Share One without limitation. In contrast, the trustee of Share Two could make distributions of the principal to Marian only for her health, education, maintenance, and support, after taking into consideration the other assets available to her.

The Marital Trust Share Two (QTIP Trust) was created as "qualified terminal interest property" (QTIP). Under the Federal Economic Recovery Tax Act of 1981, assets designated as QTIP property are eligible for the marital deduction. Because the decedent's spouse receives the marital deduction, the QTIP property is includable in the spouse's estate at his or her death. However, the spouse's estate can recover from the QTIP trust the estate tax attributable to the inclusion of the QTIP assets, unless the spouse provides in his or her testamentary instrument for payment of such excess tax from his or her estate. *See* Economic Recovery Tax Act, 26 U.S.C. §§ 2044, 2056 (2002); *In re Estate of Miller*, 230 Ill.App.3d 141, 172 Ill.Dec. 269, 595 N.E.2d 630 (1992); *In re Estate of Gordon*, 134 Misc.2d 247, 510 N.Y.S.2d 815 (N.Y.Sur.Ct.1986). Therefore, Albert's creation of the QTIP Trust effectively deferred the estate taxes attributable to the QTIP Trust at the time of his death until Marian's death.

Absent exercise of the general power of appointment included in the Marital Trust Share One, all four children were equal residual beneficiaries of the Family Trust, Marital Trust Share One, and the QTIP Trust.

After Albert's death in 1982, Marian withdrew all the assets from Marital Trust Share One, placed them in her own trust (Marian's Trust), and renounced her interest in the Family Trust. The assets of the Family Trust were divided into four shares and distributed to the children. During her lifetime, Marian continued to receive income from the QTIP Trust.

Prior to Marian's death, she removed Albert's daughters as beneficiaries of her personal estate. She also appointed her two sons and Katz, Look & Moison, P.C. (Law Firm) as the Trustees of Marian's Trust and the QTIP Trust.

After Marian died in March 2000, the QTIP Trust was included in her gross estate for tax purposes. A dispute arose between the Trustees and Albert's daughters as to how to allocate the taxes and administrative expenses of Marian's gross estate.

In March 2002, the Trustees filed a petition for instructions with the Denver Probate Court. They proposed that the QTIP Trust pay Marian's estate for the share of federal and state taxes and administrative expenses imposed on Marian's gross estate as a result of inclusion of the QTIP Trust in the estate.

In June 2002, the probate court ordered that, because Marian did not make specific reference to the QTIP Trust in her testamentary instruments, she did not intend to waive her estate's right of recovery. The court allowed the Trustees to pay a contribution to Marian's estate from the QTIP Trust in proportion to its percentage of Marian's gross estate, pursuant to § 15–12–916(2), C.R.S. 2003.

Albert's daughters then filed a motion for reconsideration and motion to compel disclosure of documents. These motions were denied, and this appeal followed.

## I. Federal Taxes

Initially, we note that the parties agree that the probate court erred in applying the proportionate formula in § 15–12–916(2) to the apportionment of federal taxes on the QTIP Trust. The parties also agree that Marian's estate may recover federal estate taxes from the QTIP Trust pursuant to 26 U.S.C. § 2207A (2002). However, they disagree as to the calculation of that apportionment.

Section 2207A provides:

(a) Recovery with respect to estate tax.—
(1) In general.—If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain property for which marital deduction was previously allowed), the decedent's estate shall be entitled to recover from the person receiving the property the amount by which—

(A) the total tax under this chapter which has been paid, exceeds

(B) the total tax under this chapter which would have been payable if the value of such property had not been included in the gross estate.

(2) Decedent may otherwise direct.—Paragraph (1) shall not apply with respect to any property to the extent that the decedent in his will (or a revocable trust) specifically indicates an intent to waive any right of recovery under this subchapter with respect to such property.

Thus, § 2207A(a)(2) allows a decedent to waive the right of recovery. The parties agree that Marian's estate documents do not waive the right of recovery from the QTIP Trust for federal taxes pursuant to § 2207A. Accordingly, Marian's estate is entitled to recover from the QTIP Trust the amount equal to the difference between the total federal tax against the estate and the amount payable if the QTIP Trust had not been included in the gross estate.

The probate court's order apportions federal taxes on a pro rata basis, in proportion to the QTIP Trust's percentage of Marian's gross estate, and not pursuant to the formula provided in § 2207A(1). Therefore, the probate court's order must be reversed. Because the record contains disputed facts on this issue, on remand the probate court must apply § 2207A to determine the amount of federal estate taxes Marian's estate may recover from the QTIP Trust.

## II. State Taxes

Albert's daughters argue that the probate court erred when it held that state taxes should be apportioned to the QTIP Trust pursuant to § 2207A and § 15–12–916(2). Specifically, they argue that even though other states have enacted statutes similar to § 2207A, which provide for apportionment unless specifically waived by the testator, there is no statutory basis in Colorado to require the QTIP Trust to pay state estate taxes. We agree.

■ Because the probate court resolved a question of law based on unambiguous written instruments and its interpretation of statutes, our review is de novo. *In re Estate of Kiser,* 72 P.3d 425, 428 (Colo.App.2003).

■ When interpreting a trust, we must give effect to the intent of the settlor or testator. *In re 1942 Gerald H. Lewis Trust,* 652 P.2d 1106 (Colo.App.1982). If the settlor's or testator's intent is unambiguously reflected in the document, we will not consider extrinsic evidence to interpret it. *In re Trusts Created by Ferguson,* 929 P.2d 33, 35 (Colo.App.1996).

■ Section 2207A is a federal statute and applies only to federal estate taxes. *See* 26 C.F.R. § 20–2207A–1 (2003). The apportionment of state estate taxes is a matter of state law. *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); *In re Will of Adair,* 149 N.J. 591, 695 A.2d 250 (1997).

■ Colorado's apportionment statute provides: "Unless otherwise provided in the will or other dispositive instrument, the tax shall be apportioned among all persons interested in the estate, subject to the exceptions specified in this section." Section 15–12–916(2). According to its plain language, § 15–12–916(2) should be applied only if the testamentary instruments do not indicate the testator's intent as to apportionment. *See In re Estate of Kelly,* 41 Colo.App. 316, 584 P.2d 640 (1978).

Here, Marian's Trust provided:

*Section 2. Payment of Taxes and Debts.* The Trustee is authorized, but not directed, to pay any expenses of the last illness, funeral and burial of Settlor; legally enforceable claims against Settlor or Settlor's estate; expenses of administering Settlor's estate; any allowances by court order for those dependent on Settlor; and the balance of all estate taxes, and inheritance or other death taxes payable by reason of Settlor's death, together with interest and penalties thereon.

. . . .

*Section 4.* No Apportionment. All such expenses, claims, and taxes shall be paid

*without apportionment and without right of contribution from any person* . . . .

(Emphasis added.)

Albert's daughters argue that this language is sufficient to reflect Marian's intent regarding apportionment, pursuant to § 15–12–916(2), and, therefore, there is no statutory basis for contribution from the QTIP Trust. However, the Trustees argue that a testator must make specific reference to QTIP property in order to waive the right of recovery. We are not persuaded by the Trustees' argument.

This is a case of first impression in Colorado with respect to whether Colorado's estate tax apportionment statute, § 15–12–916(2), requires specific reference to QTIP property to waive the estate's right to apportionment of taxes. An examination of case law of other states reveals a split of authority on this issue.

In *In re Estate of Miller, supra,* the Illinois court considered whether a tax exoneration clause in a will was sufficient to waive apportionment of taxes attributable to QTIP property. The will stated that the personal representative of the testator's estate was to pay from her estate "without reimbursement or contribution, all estate taxes, inheritance taxes, [and] death taxes." *In re Estate of Miller, supra,* 230 Ill.App.3d at 146, 172 Ill. Dec. 269, 595 N.E.2d at 633. The court concluded that the intent of the testator was clear from the terms of the will itself, even without specific reference to § 2207A or any state statute.

Two states that have apportionment statutes that are not patterned after § 2207A have similarly held the language of the testamentary instrument sufficient to demonstrate the testator's intent without specific reference to the statute or the QTIP property. *See Cleveland v. Compass Bank,* 652 So.2d 1134 (Ala.1994)(state nonapportionment statute requires estate to pay estate taxes attributable to QTIP property); *In re Succession of Haydel,* 780 So.2d 1168 (La.Ct.App.2001)(residual estate held liable for state estate taxes including QTIP property).

However, a New York court has held that a valid waiver of the right of apportionment requires specific mention of a statute or the QTIP property. In *In re Estate of Gordon, supra,* at issue was New York's apportionment statute. The testator's will created a QTIP trust for his wife's benefit. The wife's will contained a general tax clause directing that "all Estate inheritance and death taxes ... be paid out of my Residuary Estate as an administrative expense, without apportionment." *In re Estate of Gordon, supra,* 134 Misc.2d at 250, 510 N.Y.S.2d at 817. The court concluded that this language was not sufficient to waive the estate's right of recovery because it did not specifically mention the QTIP property.

In reaching its conclusion, the *Gordon* court considered that the New York apportionment statute was patterned after the federal statute and that two other states that had enacted statutes similar to § 2207A required express mention of QTIP property to waive the right of recovery. *See* Mich. Comp. Laws § 205.201[8][c] (2002); Va.Code Ann. § 64.1–66.1 (Michie 2002); *In re Estate of Gordon, supra,* 134 Misc.2d at 251, 510 N.Y.S.2d at 818.

Additionally, the court concluded that, looking at the will as a whole, it was not the testator's intent to exonerate the QTIP trust assets. The court considered that the tax clause contained in the will was form language and that to give effect to the waiver would eliminate the testator's residuary gift to charity. *In re Estate of Gordon, supra,* 134 Misc.2d at 252, 510 N.Y.S.2d at 819.

We find the decisions in *In re Estate of Miller* and related cases more persuasive. They interpret statutes like § 15–12–916(2) that do not specifically require a testator to refer to QTIP property or a statute when designating intent regarding apportionment of state estate taxes.

In *In re Estate of Kelly, supra,* a division of this court held that to avoid apportionment pursuant to § 15–12–916(2), a testator must make a clear, unambiguous manifestation of his or her intent in the language of the testamentary instrument. The *Kelly* division concluded that the estate taxes should be apportioned because the contested language merely addressed the kind of property out of which expenses and taxes were to be paid and did not clearly indicate that no apportionment should be made.

Here, however, Marian's Trust is not vague or uncertain. It unambiguously provides for payment of estate taxes and expenses "without apportionment and without right of contribution from any person." Because there is no statutory basis for contribution of state taxes from the QTIP Trust, the probate court erred by approving the Trustees' apportionment of state estate taxes under § 15–12–916(2).

### III. Conflict of Interest

Albert's daughters also argue that the probate court erred in not concluding that the Law Firm and Marian's sons had an inherent conflict of interest as trustees of the QTIP Trust and Marian's Trust. Thus, they contend that the probate court should have conducted an evidentiary hearing to determine the effects of this conflict and fashion an appropriate remedy.

█ We agree that Marian's sons and the Law Firm have a conflict of interest with respect to the QTIP Trust and remand to the probate court to determine the appropriate remedy. However, because Albert's daughters did not raise in the probate court the issue of whether the Trustees should be removed from Marian's Trust, we decline to address this issue on appeal. *See Estate of Stevenson v. Hollywood Bar Cafe, Inc.,* 832 P.2d 718, 721 n. 5 (Colo.1992)(as a general rule, an issue not presented to or raised in the trial court will not be considered on appeal).

█ A trustee owes a duty of loyalty to the beneficiary of a trust to "administer the trust solely in the interest of the beneficiary," and the trustee "must exclude all self-interest." George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 543, at 218 (2d ed.1993). As Chief Judge Benjamin N. Cardozo observed in *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928), "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the

punctilio of an honor the most sensitive, is then the standard of behavior."

Further, the Colorado Rules of Professional Conduct provide: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest...." Colo. RPC 1.7(b).

 The Colorado Probate Code grants the courts exclusive jurisdiction over proceedings initiated by interested parties to a trust, including the power to appoint or remove trustees. Section 15–16–201, C.R.S. 2003. Proof of actual past wrongdoing by a trustee is not necessary if some other legally proper ground for removal exists. Irreconcilable conflicts between the trustee's personal interests and those of the trust estate and its beneficiaries are such grounds. *Getty v. Getty*, 205 Cal.App.3d 134, 252 Cal.Rptr. 342 (1988); *see also In re Malone's Estate*, 42 Colo.App. 353, 597 P.2d 1049 (1979)(hostility and friction between the trustee and the beneficiaries are proper grounds for removal of trustee even if misconduct is not proved); Restatement (Third) of Trusts § 37 cmt. f(1) (2003).

 However, a trustee's conflict of interest does not necessarily mandate an automatic denial of all compensation. It is within the trial court's discretion to reduce or deny compensation. The trial court may award compensation only for work that reasonably related to furthering the interests of the trust and benefiting the trust beneficiaries. *In re Life Ins. Trust Agreement of Seeman*, 841 P.2d 403 (Colo.App.1992).

 Here, Marian's sons are trustees of the QTIP Trust and, accordingly, owe a duty of loyalty to Albert's daughters as beneficiaries of the QTIP Trust. Consistent with that duty of loyalty, and pursuant to the QTIP Trust documents, Marian's sons have a duty to pay only those taxes that are necessary and advisable from the QTIP Trust. Marian's sons are also trustees of Marian's Trust and beneficiaries of Marian's estate, giving them a financial interest in maximizing the contribution of the QTIP Trust's assets to Marian's estate. Therefore, we conclude as a matter of law that Marian's

sons have a conflict of interest in serving as trustees of the QTIP Trust.

 The Law Firm is also a trustee of the QTIP Trust and owes a fiduciary duty to Albert's daughters. Simultaneously, the Law Firm is a trustee of Marian's Trust and represents the cotrustees, Marian's sons, in this litigation. Therefore, the Law Firm owes fiduciary duties to its clients, Marian's sons, while also owing fiduciary duties to Albert's daughters. The Law Firm is in the precarious position of advocating in this litigation an advantageous position for its clients, Marian's sons, that, if successful, would operate to the detriment of the beneficiaries to whom it owes a duty of loyalty. Therefore, we conclude as a matter of law that the Law Firm has a conflict of interest in serving as trustee of the QTIP Trust.

Accordingly, on remand, the probate court should hold an evidentiary hearing to determine: (1) whether the Trustees should be removed and an independent Trustee appointed for the QTIP Trust, (2) whether compensation to the Trustees should be reduced or denied in light of the conflict of interest, (3) whether the Trustees or a new trustee may exercise discretion granted in the QTIP documents to pay "such amounts [of taxes and administrative expenses] as the Trustees deem necessary or advisable," and (4) whether to reconsider its ruling on the motion to compel disclosure of documents.

## IV. Administrative Expenses

 Albert's daughters also argue that the probate court erred in holding that administrative costs should be apportioned to the QTIP Trust pursuant to § 15–12–916(2). We agree.

By its own terms, § 15–12–916(2) applies only to the apportionment of taxes and is not a basis for apportioning administrative expenses. As discussed in Part II above, Marian's Trust documents unambiguously provide for the payment of the expenses of administering her estate without apportionment. Further, as discussed in Part III above, the Trustees have an inherent conflict of interest and may not exercise their discre-

tion to pay the administrative expenses from the QTIP Trust assets.

Therefore, the probate court erred by approving the Trustee's apportionment of administrative expenses under § 15–12–916(2).

## V. Attorney Fees

 Albert's daughters also argue that they should be granted attorney fees and costs associated with this litigation because they were required to correct the actions of the Trustees. We agree.

In *Heller v. First National Bank*, 657 P.2d 992, 999 (Colo.App.1982), a division of this court recognized an exception to the general rule prohibiting awards of attorney fees absent statutory or contractual provisions when there has been a breach of trust. The division indicated that an award of attorney fees in a breach of trust action may be appropriate to make an injured party whole. Therefore, the award must be reasonable, and the determination of reasonableness is a question of fact for the trial court. *See Heller v. First Nat'l Bank, supra.*

Because Albert's daughters have prevailed here, we remand to the probate court to determine a reasonable award of attorney fees in their favor.

In conclusion, we hold that there is no statutory basis for Marian's estate to recover state estate taxes and administrative expenses from the QTIP Trust and thus the probate court may not apportion state taxes or administrative expenses of the QTIP Trust. Therefore, we reverse the probate court's order, and on remand the court is instructed to hold an evidentiary hearing to determine (1) whether the Trustees should be removed and an independent Trustee appointed for the QTIP Trust, (2) whether compensation to the Trustees should be reduced or denied in light of the conflict of interest, (3) whether the Trustees or a new Trustee may exercise discretion granted in the QTIP documents to pay "such amounts [of taxes and administrative expenses] as the Trustees deem necessary or advisable," and (4) whether to reconsider its ruling on the motion to compel disclosure of documents. In addition, the probate court is instructed to apply § 2207A to determine the amount of federal taxes apportioned to the QTIP Trust and to

determine the amount of reasonable costs and attorney fees that should be awarded to Albert's daughters.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge NIETO and Judge CARPARELLI concur.