DeALMEIDA, J.T.C.
The Director, Division of Taxation moves to dismiss this matter for lack of standing. She argues that plaintiff, the residuary beneficiary of a Qualified Terminable Interest Property (“QTIP”) trust, may not challenge an estate tax assessment against the estate of her stepmother, the income beneficiary of the trust. For the reasons explained more fully below, the court concludes that plaintiff has a sufficient stake in the outcome of this matter to maintain her challenge to the estate tax assessment.
As is always the case when a court addresses the question of standing, today’s decision is closely tailored to the facts presented here. Whether the holding in this case would apply to circumstances not involving a QTIP trust residuary beneficiary who is the subject of a demand for recovery of estate taxes paid by the estate of the trust’s initial beneficiary is a question left for another day.
I. Findings of Fact
The facts necessary to resolve the standing question are not in dispute. Santo LaBarbera died while a resident of Florida. Prior to his death Mr. LaBarbera established a marital trust to provide for the maintenance and expenses of his wife Darlene LaBarbera in the event of his death. The executor of Mr. LaBarbera’s estate elected under the Internal Revenue Code to qualify the marital *380 trust as a QTIP trust. See I.R.C. § 2056(b)(7)(B). That election deferred the tax on the amount in the trust until the time of Darlene LaBarbera’s death.
Mr. LaBarbera, as the creator of the QTIP trust, had the authority to determine who would receive the principal remaining in the QTIP trust upon his wife’s death. He determined that any principal remaining in the QTIP trust at the time of Darlene LaBarbera’s death would pass to his three children from a prior marriage: Joanne LaBarbera, a New Jersey resident and the plaintiff in this matter, and her two siblings who both reside in Florida. Plaintiff and her siblings are the residuary beneficiaries of the QTIP trust. Mr. LaBarbera’s QTIP trust was maintained at a Florida bank and administered by a Florida trustee.
After Mr. LaBarbera’s death, Darlene LaBarbera, his widow, moved to New Jersey. She resided in this State and drew upon funds in the QTIP trust until her death on October 6, 2005. A New Jersey estate tax return for Darlene LaBarbera’s estate was filed with the Division of Taxation by the Executrix of her estate. In calculating the estate tax due to New Jersey, the Division included as an asset of Darlene LaBarbera’s estate the principal remaining in the QTIP trust at the time of her death. The Division’s decision to include the remaining QTIP trust principal as an asset of Mrs. LaBarbera’s estate increased the estate tax assessment.
On April 20, 2007, the Division issued a notice of assessment imposing a total of $32,461.21 in estate tax and interest against Darlene LaBarbera’s estate. This assessment reflected the Division’s decision to include the principal remaining in the QTIP trust at the time of Darlene LaBarbera’s death as an asset of her estate. Federal law provides the Executrix of Darlene LaBarbera’s estate with the right to pay the New Jersey estate tax and seek to recover from the residuary beneficiaries of the QTIP trust, including plaintiff, an amount equal to the portion of the tax attributable to the principal remaining in the QTIP trust at the time of Darlene LaBarbera’s death. The record establishes that during the administrative proceedings below the relevant parties *381 were aware that the Executrix of Darlene LaBarbera’s estate would exercise this option.
On June 28, 2007, plaintiffs counsel submitted to the Division a written protest to the estate tax imposed on Darlene LaBarbera’s estate. The letter unmistakably identifies the submission as being made “for Joanne Labarbera [sic], an heir under the Santo Labarbera [sic] Qualified Terminable Interest Property Trust....” The submission states that “Joanne Labarbera [sic] refuses to pay that portion of the Estate Tax assessed in the above Estate on the QTIP” and sets forth various substantive arguments challenging the tax on Darlene LaBarbera’s estate, including a claim that New Jersey lacks jurisdiction to tax the principal in a QTIP ti’ust established by a nonresident decedent and maintained in an out-of-State bank by a nonresident trustee.
The protest filed by plaintiff was followed by a July 17, 2007 correspondence to the Division from counsel for Darlene LaBarbera’s estate. The letter provides “[w]hile I am the attorney for the estate, and I and the Executrix of the estate are signing this protest in compliance with NJAC 18:26-12.9, since the basis of the protest exclusively involves the taxability of a QTIP trust established by a non-resident decedent I am directing you to contact [Joanne LaBarbera’s counsel] with regard to this protest and ask that I be copied on any written correspondence.” The estate’s counsel continued “[t]he legal and factual basis of this protest are documented in the attached [June 28, 2007] letter from” Joanne LaBarbera’s counsel. In effect, the estate gave Joanne LaBarbera’s counsel power of attorney to prosecute the estate’s tax appeal.
On October 5, 2007, the Division issued a notice reducing the assessment against Darlene LaBarbera’s estate. In an undated letter to counsel for Darlene LaBarbera’s estate explaining the reduction a Division official noted that “William Wagner, Auditing Supervisor, spoke to [Joanne LaBarbera’s counsel] regarding out of state property on 9/28/07.” This is an apparent reference to the fact that Joanne LaBarbera’s counsel prosecuted the administra *382 tive appeal and presented argument that convinced the Division to reduce the assessment.
On November 6, 2007, counsel for Darlene LaBarbera’s estate wrote to counsel for Joanne LaBarbera, enclosing the reduced assessment. He began his letter as follows: “Based on the tax concession totaling $20,362.57 you obtained from the State the revised original tax due is $27,663.57.” He goes on to explain that the “estate share of this tax is $11,022 while the trust is liable for $16,661.43.” In addition, he states that because the estate paid its share of the tax promptly, “the trust is solely liable for the interest charges to date totaling $1,363.84.” He thereafter demands payment from Joanne LaBarbera of $18,025.27 “to satisfy the balance due on the assessment” as well as the estate’s initial estimated overpayment of- its share of the estate tax. Estate counsel concluded his letter with the notation “[i]f you wish to continue to prosecute your constitutional claims against the State we will be happy to participate to the extent our participation is necessary to allow you to prosecute your claims.”
On November 18, 2007, Darlene LaBarbera’s estate paid in full the New Jersey estate tax assessment. The Division on December 4, 2007 issued a notice indicating that no additional estate taxes were due and owing from Darlene LaBarbera’s estate. On January 14, 2008, the Division issued tax waivers indicating that Darlene LaBarbera’s estate had satisfied its tax obligations to New Jersey.
On January 3, 2008, plaintiff filed a Complaint with this court challenging the October 5, 2007 assessment against Darlene LaBarbera’s estate. The Complaint alleges that New Jersey lacked authority to include in Darlene LaBarbera’s estate the principal remaining in the QTIP trust at the time of her death. If plaintiffs claims are successful, the estate’s demand for recovery from plaintiff effectively will be nullified.
After filing an Answer, the Director on September 8, 2008, moved to dismiss the Complaint, arguing that Joanne LaBarbera lacks standing to challenge an assessment of estate tax against Darlene LaBarbera’s estate. The Director argues that Joanne *383 LaBarbera is not “liable for the payment of any tax imposed by this chapter” as required by N.J.S.A. 54:38-10(a), the provision of the estate tax laws creating statutory standing to challenge the assessment. Nor, the Director agues, is Joanne LaBarbera a “taxpayer” within the meaning of N.J.S.A. 54:51A-16, a provision of the State Tax Uniform Procedure Law that establishes the procedures to prosecute appeals of estate tax assessments. According to the Director’s argument, while Joanne LaBarbera might ultimately be required by federal law to reimburse Darlene LaBarbera’s estate for the portion of the estate tax attributable to the principal remaining in the QTIP trust, it is Darlene LaBarbera’s estate that was “liable for the payment” of the tax under New Jersey law. The Director did not assess the tax against Joanne LaBarbera nor seek to collect the tax 1‘rom her and received full payment from the estate. Thus, the Director contends, only the estate of Darlene LaBarbera has standing to challenge the October 5, 2007 assessment.
II. Conclusions of Law
Standing analysis begins with Rule 4:26-1. “Every action may be prosecuted in the name of the real party in interest....” R. 4:26-1. “Standing refers to the plaintiff’s ability or entitlement to maintain an action before the court. Courts will not entertain matters in which plaintiffs do not have sufficient legal standing.” New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 409, 686 A.2d 1265 (App.Div.1997) (citation omitted), appeal dismissed, as moot, 152 N.J. 361, 704 A.2d 1297 (1998). In New Jersey courts “[sjtanding requires that a litigant have a sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision.” In re Bd. of Public Utils., 200 N.J.Super. 544, 556, 491 A.2d 1295 (App.Div.1985) (citation omitted). “We interpret the issue of standing broadly and will not limit the doctrine to the ‘case or controversy’ requirement of the United States Constitution.” Stubaus v. Whitman, 339 N.J.Super. 38, 48, 770 A.2d 1222 (App.Div.2001), certif. denied, 171 N.J. 442, 794 A.2d 181 (2002) *384 (citing Loigman v. Township Committee, 297 N.J.Super. 287, 294-95, 687 A.2d 1091 (App.Div.1997)).
“New Jersey courts have taken a liberal approach to standing.” Slater v. Township of Holmdel, 20 N.J. Tax 8, 11 (2002) (citing Dome Realty, Inc. v. City of Paterson, 150 N.J.Super. 448, 452, 375 A.2d 1240 (App.Div.1977)). The “ ‘courts have considered the threshold for standing to be fairly low.’ ” Id. at 12 (quoting Reaves v. Township of Egg Harbor, 277 N.J.Super. 360, 366, 649 A.2d 904 (Ch.Div.1994)). “To possess standing in a case, a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision.” In re Camden County, 170 N.J. 439, 449, 790 A.2d 158 (2002) (citation omitted). Litigants, however, generally do not have standing to assert the rights of third parties. Department of Envt’l Protection v. Dopp, 268 N.J.Super. 165, 632 A.2d 1270 (App.Div.1993). Nor will courts “entertain proceedings by plaintiffs who are mere intermeddlers or are merely interlopers or strangers to the dispute.” Crescent Park Tenants Ass’n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971) (citations and quotations omitted).
Plaintiffs claim to have standing to prosecute this matter must be determined against the backdrop of the federal statutes establishing QTIP trusts. In In re Will of Adair, 149 N.J. 591, 695 A.2d 250 (1997), our Supreme Court explained the history of the enactment of the laws allowing for a QTIP trust election. Prior to 1981, federal law “allowed a maximum marital deduction of 50% of the value of the estate of the first spouse to die and that deduction was available only in circumstances where the surviving spouse was given control over the disposition of the marital property at the time of the surviving spouse’s death.” Id. at 597, 695 A.2d 250. However,
“[a]s divorce and remarriage rates rose, Congress became increasingly concerned with the difficult choice lacing those in second marriages, who could either provide for their spouse to the possible detriment of the children of a prior marriage or risk under-endowing their spouse to provide directly for the children. In the Economic Recovery Act of 1981, Congress addressed this problem by creating the QTIP *385 exception to the terminable property interest rule. According to the House of Representatives Report, the QTIP trust was designed to prevent a decedent from being 'forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children.’ ”
[Ibid, (quoting Estate of Shelfer v. Comm'ner Internal Revenue, 86 F.3d 1045, 1049 (11th Cir.1996)) (citations omitted).]
As a result of the creation of the QTIP trust election option, a decedent can “provide for a surviving spouse while controlling the ultimate disposition of the property after the surviving spouse’s death.” Id. at 597, 695 A.2A 250. “The value of QTIP property is deducted from the decedent’s gross estate [in this case Santo LaBarbera], and no taxes are paid on it at the decedent’s death.” Id. at 598, 695 A.2d 250 (citing I.R.C. § 2056(a)). “The tax owed on the QTIP property is deferred until the death of the surviving spouse, at which point the QTIP property is included within the surviving spouse’s gross estate!, in this case Darlene LaBarbera].” Ibid, (citing I.R.C. § 2044).
A crucial aspect of QTIP trusts is that “Section 2207A(a)(l) of the Code provides that the estate of the surviving spouse has the right to recover from the recipients of the QTIP principal the amount by which the total federal estate tax exceeds the tax that would have been payable if the QTIP trust had not been included in the gross estate.” Id. at 598, 695 A2d 250. That provision states:
(a) Recovery with respect to estate tax.
(1) In general. If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain real property for which marital deduction was previously allowed), the decedent’s estate shall be entitled to recover from the person receiving the property the amount by which—
(A) the total lax under this chapter which has been paid, exceeds
(B) the total tax under this chapter which would have been payable if the value of such property had not been included in the gross estate.
[26 U.S.C.A. § 2207A.]
It is not disputed that the Executrix of the estate of Darlene LaBarbera demanded under this provision recovery from Joanne LaBarbera of the portion of the New Jersey estate tax assessment attributable to the principal remaining in the QTIP trust at the time of Darlene LaBarbera’s death. Having received a distribu *386 tion from the QTIP trust prior to the expiration of the right of recovery, Joanne LaBarbera is a person receiving property under the trust within the meaning of the statute. 26 C.F.R. § 20.2207A-l(d) (2008).
New Jersey imposes an “estate or transfer” tax “[u]pon the transfer of the estate of every resident decedent dying after December 31, 2001 which would have been subject to an estate tax payable to the United States” under the Internal Revenue Code “in effect on December 31, 2001.” N.J.S.A. 54:38-la(2)(a). Although the tax is imposed on the estate and not its beneficiaries, “all administrators, executors, trustees, grantees, donees and vendees, shall be'personally liable for any and all such taxes until paid____” N.J.S.A. 54:38-6. An estate’s tax return and other information must be filed by the “executor, administrator, trustee or other person or corporation liable for the payment of the estate tax....” N.J.A.C. 18:26-3A.8(a). Importantly, N.J.S.A. 54:38-11 provides that the “tax imposed by this chapter shall be paid out of the same funds as those from which federal estate taxes are payable.”
The Legislature established jurisdiction in this court to hear challenges to estate tax assessments. “The tax court on appeal shall have jurisdiction to hear and determine all questions in relation to any tax imposed under the provisions of this chapter.” N.J.S.A. 54:38-10a. Statutory standing to file such an appeal is vested in “[a]ny executor, administrator, trustee, person or corporation liable for the payment of any tax imposed by this chapter____” Ibid. Additionally, N.J.A.C. 18:26-3A.13(b) states that “[a]ny executor, administrator, trustee, person or corporation liable for the payment of the estate tax and aggrieved by any decision, order, finding or assessment of the Director, may appeal to the Tax Court of New Jersey for a review thereof____” All such appeals are governed by pertinent provisions of the State Tax Uniform Procedures Act, N.J.S.A. 54:51A-13 to 23.
The court concludes that Joanne LaBarbera has standing under the controlling statutes to pursue this matter because she is ' ultimately liable for the New Jersey estate tax imposed on Dar *387 lene LaBarbera’s estate to the extent that the tax is attributable to the principal remaining in the QTIP trust at the time of Darlene LaBarbera’s death. While it is true that New Jersey’s estate tax is imposed on Darlene LaBarbera’s estate and not on Joanne LaBarbera, federal law permits the Executrix of Darlene LaBarbera’s estate to recover from the residuary beneficiaries of the QTIP trust, including Joanne LaBarbera, an amount equal to the estate tax attributable to the principal remaining in the QTIP trust. U.S.C.A. § 2207A(a)(l). N.J.SA. 54:38-11, which provides that New Jersey’s estate taxes may be paid from “the same funds as those from which federal estate taxes are payable,” is evidence that the Legislature recognized and accepted the tax payment structure established in federal law in this area. That statutory scheme includes the option exercised here to demand recovery of estate tax from the QTIP trust’s residuary beneficiary.
The court concludes, therefore, that Joanne LaBarbera is a “person ... liable for the payment of” a portion of the estate tax imposed on the estate of Darlene LaBarbera, sufficient to afford her standing to challenge that assessment in this court. N.J.S.A. 54:38-10a. She is also a person “liable for the payment of the estate tax and aggrieved by any decision, order, finding or assessment of the Director ....” as contemplated in N.J.A.C. 18:26-3A.13(b) and a “taxpayer” under N.J.S.A. 54:51A-16 for standing purposes. As Justice Garibaldi explained in In re Will of Adair, stipra, through enactment of the QTIP trust election option Congress intended to permit a decedent to delay taxation on funds placed in a QTIP trust until those funds pass to the residuary beneficiary of the trust. Consistent with this approach, Congress authorized the executor of the initial beneficiary’s estate to demand from the residuary beneficiary recovery of estate taxes attributable to the principal in the QTIP trust at the time of the initial beneficiary’s death. 149 N.J. at 597-98, 695 A. 2d 250.
Joanne LaBarbera has a defined, identifiable and certain financial obligation created by federal law based on the Director’s assessment of estate tax against Darlene LaBarbera’s estate. She has a sufficient stake in the outcome of this matter, given that a favorable decision would erase her financial obligation to the *388 estate. In addition, it is plain that her position is adverse to that of the Director’s position. The likelihood that she will suffer harm if this matter is decided in the Director’s favor is firmly established by the demand of the Executrix that Joanne LaBarbera make Darlene LaBarbera’s estate whole for the portion of the tax attributable to the QTIP trust. Joanne LaBarbera is no stranger to this dispute and her interest in the outcome of this matter is not that of an intermeddler.
Joanne LaBarbera’s concrete financial stake in the assessment at issue here was recognized during the administrative process below. Joanne LaBarbera, acting with the consent of Darlene LaBarbera’s estate, prosecuted the administrative appeal of the Director’s initial assessment of estate tax. Counsel for the Executrix effectively delegated authority to prosecute the administrative appeal filed by the estate to counsel for Joanne LaBarbera, referring the Director to the statement of facts and legal arguments made on behalf of Joanne LaBarbera challenging imposition of the tax. The Director’s modified assessment reflected this fact, given that the Supervising Auditor charged with reviewing the appeal acknowledged reducing the assessment after speaking with Joanne LaBarbera’s counsel.
The Director’s interpretation of N.J.S.A. 54:38-10a is not entitled to particular deference because it concerns “a strictly legal issue,” American Fire & Casualty Co. v. Director, Div. of Taxation, 189 N.J. 65, 79, 912 A.2d 126 (2006), and is contrary to the long-accepted liberal approach to standing taken by New Jersey courts. Were this court to adopt defendant’s position and find that Joanne LaBarbera lacks standing to challenge the Director’s decision, the estate tax assessment against Darlene LaBarbera’s estate might well go unchallenged, but Joanne LaBarbera’s obligation to make the estate whole for the tax would remain in place. The Executrix of Darlene LaBarbera’s estate has little incentive to challenge the assessment because federal and New Jersey law give the estate the right to demand recovery of the taxes attributable to the QTIP trust from Joanne LaBarbera. It certainly would be reasonable for the Executrix to decide that her time and the estate’s resources not be devoted to prosecuting the *389 appeal of an assessment for which the estate ultimately is not liable, even if the assessment is vulnerable to legal challenge.
Additionally, as noted in In re Will of Adair, supra, the QTIP trust election was created to address circumstances involving second spouses and step-children from the original decedent’s first marriage. It is not difficult to imagine scenarios in which animosity exists between the administrator of a second spouse’s estate and the children from the first marriage. It is possible that the administrator would pay and refuse to challenge a legally vulnerable estate tax assessment attributable to a QTIP trust merely because doing so would diminish the financial recovery of the residuary beneficiaries, the stepchildren of the second spouse.
For these reasons, the court concludes that Joanne LaBarbera has a sufficient stake in the outcome of this matter to have standing. The court notes that no claim is made that Joanne LaBarbera’s challenge to the estate tax assessment conflicts with the interests of Darlene LaBarbera’s estate or interferes with the ability of the Executrix to fulfill her duties. Such circumstances would warrant consideration of interests not present here and could justify a different outcome. Nor is Joanne LaBarbera simply a beneficiary of an estate who seeks to reduce the estate’s tax liability so as to enhance her inheritance. She has direct ultimate financial responsibility established by federal and New Jersey law for the estate tax at issue here.
An Order effectuating the court’s decision is enclosed.